WESTERN MONTANA PRODUCTION CREDIT ASSOCIA-
TION, a Corporation, Plaintiff, v. HYDROPONICS, INC.
of Montana, Defendant and Appellant and Cross-Re-
spondent, and   J. C. WEBER, MRS. J. C. WEBER, and
THOMAS H. CORNWELL, Defendants, Respondents and
Cross-Appellants.

No. 10975.
Submitted January 12, 1966. Decided February 4, 1966.
Rehearing denied March 3, 1966.
410 P.2d 937.

Garlington, Lohn & Robinson, J. C. Garlington (argued), Missoula, for appellant.

R. H. Wiedman (argued), Polson, Small & Cummins, William F. Crowley, Robert Cummins (argued), Helena, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This appeal is from a judgment entered in the District Court of Lake County, after motions for summary judgment had been made by both parties, the judgment dismissing with prejudice the claims of the parties, one against the other.

The procedural development of this action is complex. It will be related chronologically.

Late in 1960, J. C. Weber executed a contract with Hydroponics, Inc., of Montana (hereafter called Montana Hydroponics) whereby he purchased a green feed unit designed to produce nourishing winter grass feed for stock. Since this machine was one of the first to be installed in Montana, the manufacturer, Hydroponics, Inc., of Indiana (hereafter called Indiana Hydroponics) sent its representative to personally install the machine on Weber's ranch. The machine was installed and placed in operation during December 1960.

During January and February 1961 eighteen of Weber's cattle died. It was eventually determined that the machine produced grass covered with cyanide containing mold. The animals died from cyanide poisoning.

During May 1961, Indiana Hydroponics sent its representa-

tive to inspect the machine. It was discovered the machine had been negligently installed—some air vents improperly left closed. The machine was again put into operation. It produced nourishing grass feed for about twelve months when, without explanation, the poison mold again appeared. The machine was shut down and has not been used since. It now stands intact on Weber's ranch.

In February 1962, Weber filed, in a Montana district court, a claim against Indiana Hydroponics which was later removed to the federal court and which resulted in judgment in his favor in the amount of $7,305.65, covering the cattle actually killed by the poison grass. The judgment recited that the damages were "a direct and proximate result of the defendant's negligence and breach of warranty." Weber's claim for an additional $12,000, based upon loss of butterfat content in his milk due to sickness of the dairy cows, was denied by the federal court because there was "not sufficient evidence from which the amount of this loss can be determined with certainty."

In November 1963, Western Montana Production Credit Association filed a claim naming Weber, Montana Hydroponics, and Thomas H. Cornwell as defendants in an action to determine ownership of cattle sale proceeds for some of Weber's cattle. Western Montana Production Credit Association and defendant Cornwell have settled their claims and neither is now involved in the suit. During the course of the proceedings, Weber filed a cross-claim against Montana Hydroponics seeking in the alternative: (1) rescission of the original sale contract for the green feed unit, or; (2) damages in the amount of $12,000, i.e., those damages not awarded Weber in the federal court action against Indiana Hydroponics.

Montana Hydroponics countered with a cross-claim against Weber for all the full purchase price of the sale contract. Both claims were dismissed with prejudice and both parties now bring this appeal—Montana Hydroponics as appellant (and

cross-respondent) and Weber as respondent (and cross-appellant).

The several pleadings between these parties fetched grotesque results when viewed in the light and purpose of Montana's newly adopted Rules of Civil Procedure, and led to confusion rather than simplicity and clarity. The task of untangling the arguments put forth would be wearisome and unenlightening.

Our problem here is concerned with the claim of Montana Hydroponics that they were in privity with Indiana Hydroponics and therefore entitled to assert that the federal court judgment is res judicata as to the claim of the Webers for damages; however, they also contend that since they were not parties to the federal court action they are not barred from asserting the validity of their contract with the Webers for the purchase price of the machine; questions were also raised as to the proper procedure under the Rules which are urged as having been necessary to be complied with by the Webers in the federal court action. Webers, on the other hand, seek rescission of the sale contract for the machine, or damages.

Turning then to the contentions of the parties, it must be remembered that the federal court claim was based in tort. Considerable effort was expended to prove Indiana Hydroponics' negligent breach of duty and performance as established by the warranty attached to the machine. The claim was for damages caused by the negligence of a representative of Indiana Hydroponics who personally installed the machine and placed it in operation.

In the present action, respondent Weber asks for rescission of a sales contract executed between Weber and Montana Hydroponics, financed through local Montana facilities, and in which Indiana Hydroponics is not mentioned by name or reference, except for the following:

"Purchasers [Weber] agree to pay interest on the purchase price * * * from the date which theh ydroponic unit is loaded

and shipped from the manufacturing plant at Indianapolis, Indiana * * * ."

It is clear that the federal court claim was at law for damages negligently caused, while the claim here is in equity for rescission, or in the alternative, for damages. Regardless of the privity issue, it is first necessary to put straight the doctrine of res judicata as compared to that of collateral estoppel.

"The term res judicata is often used to denote two things in respect to the effect of a valid, final judgment: (1) that such judgment, when rendered on the merits, is an absolute bar to a subsequent action, between the same parties or those in privity with them, upon the same claim or demand; and (2) that such a judgment constitutes an estoppel, between the same parties or those in privity with them, as to matters that were necessarily litigated and determined although the claim or demand in the subsequent action is different. Under the first proposition the judgment operates as a bar * * *. Under the second proposition the judgment prevents the parties from relitigating only those matters that were determined." 1-B Moore F.P. 621-622, § 0.405.

The first proposition is properly called res judicata while the second is called collateral estoppel. Perhaps a clearer picture of each concept is presented in 1-B Moore F.P. 632-633, § 0.405.

"Thus a judgment for either plaintiff A or defendant B on A's claim, rendered after trial on the merits of the claim, is a final judicial settlement thereof, regardless of whether A has put forward all the grounds of recovery available to him in connection with his claim and of whether B has interposed all defenses open to him and even though the parties may have lacked knowledge of their complete legal rights therein. * * *

"The judgment referred to above in the A-B litigation would not be res judicata if A were to sue B on a different claim, i.e., a different cause of action, although the prior adjudication will have an operative effect, as collateral estoppel, in the

second action, provided it adjudged matters that were then relevant and material and these are now at issue in the second A-B action."

From the above, it is clear that the question of privity between Montana Hydroponics and Indiana Hydroponics in the federal court action is irrelevant, except insofar as it now precludes Weber, by collateral estoppel, from again litigating the damage issues determined with finality upon the merits in the federal court. But, it is equally clear that the question of rescission was never raised in the federal court. No evidence was received relating to rescission, no such remedy was asked for or suggested, and no decision relating thereto was rendered. Thus, not only do we have different parties in this action, but also a totally different claim.

The appellant's argument that Weber should have joined all parties and all remedies in the federal suit fails. The applicable Rules of Civil Procedure to the facts of this case concerning joinder are M.R.Civ.P., Rule 20, and M.R.Civ.P., Rule 18 (a). The former concerns permissive joinder of parties, the latter permissive joinder of claims.

This court will not, as the appellant would wish, consider in this case, upon the pleadings and facts before it, whether Weber could have, or should have, proceeded in federal court in a manner more conducive to full settlement of all the disputes surrounding the hydroponics unit he purchased.

Suffice it to say, that respondent Weber is entitled to his day in court concerning the question of rescission. Appellant is likewise entitled to appropriate counterclaims. Weber is, however, precluded from again litigating the issue of damages—both those actually awarded by the federal court and those denied due to lack of certainty—upon the doctrine of collateral estoppel. In that action, Weber selected his tortfeasor and presented his evidence. The facts surrounding the damages in that action are identical with the facts which would be presented in this cause. Weber has had his day in court con-

cerning damages. He has not had his day in court concerning rescission of the contract executed between himself and Montana Hydroponics.

For these reasons, the judgment is reversed and the cause remanded to the district court for further proceedings not inconsistent with this opinion. Each party to bear their own costs on this appeal.

MR. JUSTICES JOHN C. HARRISON, DOYLE, ADAIR and CASTLES concur.