No. 83-523

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

HILDA M. PETERSON,

      Plaintiff and Appellant,

  -vs-

MONTANA BANK OF BOZEMAN, N.A.,
as personal representative of
the Estate of GEORGE J. STUBLAR,
deceased, and WARREN A. McMILLAN,

      Defendants and Respondents.

---

APPEAL FROM:  District Court of the Eighteenth Judicial District,
            In and for the County of Gallatin,
            The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Bolinger & Conover, Richard C. Conover and Hal Bolinger
        argued, Bozeman, Montana

    For Respondents:

        Nash & Nash; Donald A. Nash argued for Stublar,
        Michael Nash argued for Montana Bank and Stublar,
        Bozeman, Montana
        Wellcome & Frost; Albert Frost argued for McMillan,
        Bozeman, Montana

---

              Submitted:   June 4, 1984

               Decided:   August 16, 1984

Filed:  AUG 16 1984

<u>Ethel M. Harrison</u>
             Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Hilda M. Peterson brought an action under Rule 60(b), M.R.Civ.P., in the District Court, Eighteenth Judicial District, Gallatin County, for declaratory relief from a default judgment and subsequent sheriff's sale of Peterson's property. The District Court entered summary judgment against Peterson on the grounds that the default judgment was res judicata, and that Peterson's independent action was a collateral attack upon the default judgment.

We hold on appeal that the principles of res judicata and collateral attack do not apply to the default judgment obtained against Peterson because that judgment has never become final; that an independent action under Rule 60(b), M.R.Civ.P., lies to afford declaratory relief to Peterson in the circumstances described here; and, we remand this cause to the District Court for further proceedings with instructions to grant declaratory relief to Peterson.

On October 14, 1976, Hilda M. Peterson as seller entered into a contract for sale of real property with Warren A. McMillan as buyer. On November 1, 1981, the principal balance due on the contract to Peterson was approximately $99,000. The contract was duly recorded. Also on November 1, 1981, McMillan was required to pay to Peterson an annual payment of $9,912.

The real property which Peterson had agreed to sell to McMillan under the contract for sale was subject to a mortgage to George J. Stublar, now deceased, who had loaned Peterson $26,000. Peterson signed a promissory note payable to Stublar which recited that the loan was secured by a

mortgage on the real estate which was the subject of the contract of sale between Peterson and McMillan. The mortgage was duly recorded. Its existence was recognized in McMillan's contract to purchase the real estate.

On June 18, 1981, Stublar filed a complaint in District Court against Peterson, cause no. 27580, alleging nonpayment of the promissory note. Stublar did not in that action seek foreclosure of the mortgage, although the note set forth in his complaint contains a reference to the fact that it is secured by a mortgage on real property.

On July 24, 1981, default judgment on the note was entered by the District Court against Peterson in the sum of $26,000 plus related attorneys fees of $3,500 and costs.

On August 5, 1981, a writ of execution was issued on the July 24, 1981 judgment. No return of that writ of execution has been made to the District Court.

On September 1, 1981, an alias summons in cause no. 27580 was issued by the clerk of the court and on November 23, 1981, another judgment by default was entered by the District Court in cause no. 27580 in favor of George J. Stublar and against Peterson, this time for $28,919.48, which included accrued interest, plus related attorneys fees of $3,500 and costs.

When the alias summons of September 1, 1981 had been served on Peterson, she consulted with a Bozeman attorney, and he entered an appearance on her behalf in cause no. 27580 by filing a motion to dismiss. The motion to dismiss was overruled, and Peterson was given 20 additional days to plead beginning October 5, 1981. On October 26, 1981, Stublar filed an affidavit of ill health, requesting that the cause be expedited. On November 2, 1981, Peterson's attorney not

- 3 -

appearing, the court granted the motion for expedition and ordered that Peterson's answer be filed within three days. The court set trial for November 20, 1981.

On November 20, 1981, Peterson's counsel appeared before the District Court. He indicated that Peterson had no defense to the action, since the amount was due and unpaid. At that time, the District Court asked why Stublar was not proceeding to foreclose on the mortgage, and Peterson's counsel stated "That's what I am wondering." The District Court entered a second default judgment against Peterson on November 23, 1981.

In the meantime, on November 1, 1981, an annual payment on the contract for sale of real estate of $9,912 was due from McMillan to Peterson. McMillan did not make the payment, but instead telephoned Peterson and asked permission to hold off on the payment for a period of time.

On November 23, 1981, a second writ of execution was issued out of the District Court. The second writ refers to the judgment of July 24, 1981, and not to the judgment of November 23, 1981. The second writ directed the sheriff to levy and execute upon property of the defendant on a judgment of $28,919.48, plus interest and costs to the total amount of $38,993.86. The second writ of execution was not returned to the District Court by the sheriff until after this action for declaratory relief had been filed.

Apparently under the second writ of execution, a sheriff's sale was held on or about December 1, 1981. At the sheriff's sale, Warren McMillan, the purchaser under the contract with Peterson, purchased Peterson's seller's interest in the contract for deed for the sum of $39,000. McMillan thus became the owner of the contract for sale to

himself and for the sum of $39,000 bought the seller's rights to a contract on which he at the time owed approximately $99,000.

On December 29, 1981, Montana Bank of Bozeman was appointed the personal representative of the estate of George J. Stublar. We do not find in this record the date of Stublar's death.

On February 19, 1982, Peterson filed this action against Montana Bank of Bozeman, as a personal representative of the estate of George J. Stublar, and Warren A. McMillan, for declaratory relief under Rule 60(b), M.R.Civ.P. Peterson, in this separate independent action, demanded judgment against the defendants (1) declaring the sheriff's sale of December 1, 1981 to be void; (2) declaring the McMillan's payment to the sheriff was voluntary; (3) declaring the writ of execution to be satisfied; (4) for compensatory damages of $10,000 and punitive damages of $50,000; (5) declaring the McMillan contract for sale terminated; and, (6) for costs and disbursements including attorneys fees.

It is from the judgment of District Court denying declaratory relief that this appeal ensued.

As we indicated earlier, the District Court in granting summary judgment determined that the default judgment in District Court cause no. 27580 was res judicata, and that Peterson's independent action for relief under Rule 60(b), M.R.Civ.P., constituted a collateral attack against the judgment in cause no. 27580. These grounds are incorrect, because on the record here, the default judgment against Peterson has never become final.

The default judgment in cause no. 27580 was entered against Peterson after she had appeared in the action by

counsel. Entry of default judgments is controlled in Montana by Rule 55(b), M.R.Civ.P. If a defendant has not appeared in an action, the clerk of the court is empowered, upon request of the plaintiff, and upon affidavit of the amount due, to enter judgment for that amount and costs against the defendant after his default for failure to appear. Rule 55(b)(1). If, however, the party has appeared in the action, then the judgment of default must be entered by the court under Rule 55(b)(2). When the defendant has appeared either in person or by counsel, additional duties then devolve upon the party entitled to the judgment:

> "An appearance does not prevent a party from becoming in default. But under the rules a party who enters a proper appearance, although he may become in default because of failure to plead or otherwise defend within the time required by the rules, is entitled to the same notice of the proceedings taken and the acts done as a party who is not in default. The rules make no distinction between a general and special appearance. Thus a party, who makes an appearance but defaults, is entitled to notice of all proceedings taken and acts done in the action. But a party who is in default for failure to appear is not entitled to notice of any proceeding taken or act done. The provisions of Rule 5(a), requiring the service of pleadings and other papers upon every party not in default for failure to appear, are reinforced and supplemented by the provisions of two other rules covering situations in which notice is important. Thus Rule 55(b)(1) permits the clerk, upon the request of the plaintiff and without notice to the defendant, to enter a judgment by default against a defendant (not an infant or incompetent person) who has been defaulted <u>for failure to appear</u>, when the plaintiff's claim is for a sum certain or for a sum which can by computation be made certain. Rule 55(b)(2) covers all other cases in which a judgment by default is entered. It requires service of a written notice of the application for judgment by default upon the party against whom the judgment is sought <u>if he has appeared in the action</u>; and that the default judgment be entered by the court. And Rule 77(d) requires the clerk to mail a notice of the entry of an order or judgment to every party who is not in default for failure to appear. A party who makes an appearance thus receives notice of the progress of the action.. . ." 2 Moore's Federal Practice 1337-8 (1964) ¶ 5.05, (footnotes omitted.) (Emphasis in original.)

The rules in Montana follow the federal counterparts in these respects. Rule 5(a), M.R.Civ.P., provides that no service need be made on parties in default for failure to appear, but otherwise a party who appears is entitled to all the requirements of service set out in the rules. Rule 55(b)(2), as does the federal counterpart, requires a written notice of the application for judgment by default to be served three days prior to the hearing on the application. That notice may have been given here by the order of the District Court dated November 17, 1981, setting trial three days later. Rule 77(d), M.R.Civ.P., requires that immediately upon the entry of an order or judgment, the clerk shall serve a notice of the entry "upon each party who is not in default for failure to appear." In Big Spring v. Blackfeet Tribe of the Blackfeet Indian Reservation (1978), 175 Mont. 258, 573 P.2d 655, we stated that if a party appears by filing a motion, he is entitled to a notice of all subsequent proceedings.

Respondents in this case claim that the judgment against Peterson in cause no. 27580 has become final and the time for filing an appeal has expired. However, the clerk of the District Court has not mailed a notice of entry of the default judgment as required by Rule 77(d), nor have the respondents caused the clerk to send such notice; nor have the respondents served notice of entry of judgment themselves. In that situation, the default judgment is still open to appeal, Pierce Packing Company v. District Court (1978), 177 Mont. 50, 579 P.2d 760, and the judgment is not final for the purposes of filing a motion for relief from judgment under Rule 60(b).

Since in the default judgment case notice of entry of judgment has not been served, the time for appeal is still open, as is the time for post-trial motion (Rule 59(b)), and the default judgment is not final. Res judicata applies only to final judgments or to orders which are intended to be final in their nature. Lien v. Murphy Corporation (Mont. 1982), 656 P.2d 804, 39 St.Rep. 2252; Boucher v. Dramstad (D.C. Mont. 1981), 522 F.Supp. 604; Western Montana Production Credit Association v. Hydroponics, Inc. (1966), 147 Mont. 157, 410 P.2d 937.

For the same reason the defense of collateral attack is not available to the respondents to prevent relief to Peterson under Rule 60(b).

In its memorandum of decision supporting its summary judgment, the District Court recognized that the issue of law posed by Peterson in her independent action was whether the sheriff's sale and execution of December 1, 1981, was void and of no force and effect. The District Court never came to consider that issue because of its opinion that res judicata and the principle of collateral attack applied.

We proceed now to consider the second problem in this case, whether an action lies under Rule 60(b), M.R.Civ.P., to set aside the sheriff's sale in the circumstances described in this case.

Rule 60 was adopted in the federal court system, and by us, in order that substantial justice might be accomplished. We find in Rule 60(b), in the early part of its language, six different grounds upon which a court may relieve a party from a judgment, order or proceeding. There is a stricture, however, in that the judgment, order or proceeding must be final, to justify relief under the six grounds then set out.

- 8 -

However, Rule 60(b) does not end there. There is a residual clause which is a broad recognition of the power inherent to a court. It contains this provision:

". . . This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court."

The broad residual clause does not include the word "final" before "judgment, order, or proceeding" and by its own language, the relief is not limited simply to a judgment. We determine that a sheriff's sale on execution is a "proceeding," for which under proper circumstances, a court may "grant relief" under Rule 60(b). Such relief may be granted under the residual clause on the basis of equitable principles. 7 Moore's Federal Practice 60-371, (1983), ¶ 60.37.

The record indicates that Peterson was not "actually personally notified as may be required by law" either of the default judgment, or of the sheriff's sale.

Stublar is guilty of a number of procedural errors in connection with the default judgment and subsequent sheriff's sale. Stublar failed to serve a written notice of application for default judgment at least three days prior to the hearing on such application. Rule 55(b). In addition to the 3-day notice provided in Rule 55(b), if the service was by mail, Peterson's counsel was entitled to an additional 3 days notice under Rule 6(e), M.R.Civ.P. Failure to give the required notice is generally regarded by the courts as a serious procedural irregularity, though at times the error is held to be harmless when considered in conjunction with

other circumstances. 6 Moore's Federal Practice 55-57 (1972), ¶ 55-05[3].

There are further problems with the proceedings taken by Stublar in the sheriff's sale itself. The original writ of execution, issued on the judgment of July 24, 1981, was never returned. The writ of execution issued after the judgment of November 23, 1981, does not refer to the second judgment, but rather to the judgment of July 24, 1981. Again the return of the sheriff as to the second writ of execution was not made to the court within the 60 days required by section 25-13-404, MCA. If the sheriff's sale is to be regarded as a sale of an interest in real property, the clerk of the District Court here does not have a returned execution to record in connection with the real property interest as required in section 25-13-405, MCA. Although counsel for Stublar maintains that Peterson's interest as a seller of a contract for deed is personal property, he nevertheless prepared a certificate of sale for real property under section 25-13-711, MCA.

The second default judgment of November 23, 1981, taken by Stublar, improperly compounded the interest due on the promissory note.

The extension of note and mortgage executed by Hilda M. Peterson and George J. Stublar on January 22, 1980, included the provision that Hilda would pay to George interest in the sum of $2,210 until November 1, 1979, and then an additional sum of interest of $709.48 until January 22, 1980. Thereafter the note and mortgage was to bear interest at 12% per annum on the $26,000.

The total of those two interest sums, $2,919.48, was added to the judgment obtained by Stublar on November 23,

1981. At the time of the sale on execution by the sheriff, Stublar collected interest on the full amount due and owing, including the $2,919.48 which represented an accrual of interest. This was contra to the provision of section 25-9-205, MCA, that interest must not be compounded in any manner or form when judgments are calculated.

Our review of the District Court file in cause no. 27580 reveals that the judgment which was obtained by Stublar on July 24, 1981, for $26,000, plus $3,500 in attorneys fees, has never been vacated. It is still docketed as a judgment in the District Court. In addition, the second judgment obtained by Stublar in cause no. 27580 on November 23, 1981, for the sum of $28,919.48 is docketed and remains in full force and effect. Although Peterson's interest in the mortgaged property has been sold by Stublar at sheriff's sale, no partial or full satisfaction of judgment has been entered in cause no. 27580. Thus the judgment lien remains outstanding against any property that Peterson may hold at the present time.

On March 22, 1982, after Peterson had begun her independent action for relief from default judgment on February 19, 1982, the writ of execution issued on November 23, 1981 was filed in the District Court in cause no. 27580. Attached to the writ of execution is a certificate of sale to Warren McMillan dated December 2, 1981; a sheriff's sale notice dated November 24, 1981, setting execution sale on December 1, 1981; and a return of sale by the sheriff dated December 2, 1981, but not filed with the clerk of the District Court until March 22, 1982.

The return of the sale by the sheriff that was eventually filed is deficient in several respects. It

contains no recitation of what the sheriff did in preparing for the sale on execution. Although a notice of sheriff's sale is attached, there is nothing in the return of sale or in any court record in cause no. 27580 that would indicate when and where notice was given by the sheriff of the sale as required in section 25-13-701, MCA. Thus, if a attorney were asked to give an opinion as to the merchantability of the property purchased by McMillan at the sale and execution, the attorney would be unable to determine from an abstract of title based on court documents that the statutory notice of the sheriff's sale had been given in the manner required by law, and in the course of good practice would determine the title to be unmerchantable.

We note also that the return of execution by the sheriff recites that the money he collected for the sale was paid over, not to the judgment creditor, but to McMillan, the purchaser at the sheriff's sale.

This case addresses the equity jurisdiction of this Court. We have a duty to determine all of the issues of this case and to do complete justice. Hames v. City of Polson (1950), 123 Mont. 469, 477, 215 P.2d 950, 955. We could at this point remand the cause to the District Court for further proceedings, since the judgment obtained here is not final, so that the District Court could determine relief to be granted under Rule 60(b). Our duty in this matter, however, is defined in section 3-2-204(5), MCA, which states:

> "In equity cases and in matters and proceedings of an equitable nature, the supreme court shall review all questions of fact arising upon the evidence presented in the record, whether the same be presented by specifications of particulars in which the evidence is alleged to be insufficent or not, and determine the same, as well as questions of law, unless for good cause a new trial or the

taking of further evidence in the court below be ordered.. . ."

In Stevens v. Trafton (1908), 36 Mont. 520, 93 P. 810, we stated the purpose of that enactment was to expedite final judgment in cases where the parties were not entitled to trial by jury, to put an end to litigation, and to avoid the necessity of new trials.

As we stated earlier, under Rule 60(b), M.R.Civ.P., an execution sale is a "proceeding" for which a court may grant relief to a defendant in an independent action. We find reason to grant such relief here where the proceedings to obtain the default judgment are faulty, Peterson was not given actual notice of the sheriff's sale, the purchase price at the sheriff's sale is inadequate, and other circumstances justify relief.

From the time that Peterson's counsel appeared at the default judgment hearing on November 20, 1981, neither he nor Peterson had any further notice from Stublar as to what was happening in the case. No notice of application for default judgment was served upon Peterson or her counsel. Although counsel for Peterson on oral argument indicated that notice of the sheriff's sale was posted in three separate places in Gallatin County, no court record indicates this as a fact. When the sheriff's sale was conducted, the contract for sale of real estate was treated as personal property. It had a balance due upon it of nearly $99,000, but was sold for the sum of $39,000 to the contract buyer who owed the $99,000 in the first place. These factors are enough, considering the inadequacy of the purchase price at the sheriff's sale, to set aside the execution sale.

The Court of Appeals of Arizona noted in Mason v. Wilson (1977), 116 Ariz. 255, 568 P.2d 1153, 1155:

> "A court may order an execution sale set aside on the basis of two grounds: First, the purchase price received at the sheriff's sale may be so inadequate as to shock the conscience of the court and justify setting aside the sale, (Citing authority). Second, where there is an inadequacy of price which in itself might not be grounds for setting aside the sale, slight additional circumstances or matters of equity may so justify.. . ."

In Mason, the Arizona court set aside an execution sale when it appeared the proper notice had not been given to the judgment debtor of the upcoming sheriff's sale. In this case, although Stublar's attorney sent a letter to Peterson advising her that a sheriff's sale would be held in connection with the first writ of execution, no second letter or notice was given personally either to Peterson or her attorney respecting the sheriff's sale set for December 1, 1981. The situation here, in the interests of due process, required actual notice to Peterson. As the Arizona court said in Mason:

> "Whether notice was required to be given in spite of the statute is a matter of constitutional law. The U.S. Supreme Court has held that notice and opportunity to be heard are fundamental requisites of due process. Mullane v. Central Hanover Bank and Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865, (1950). The general rule that emerges from Mullane is that notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question. Under the circumstances here, we disagree with appellee that a right to notice is a 'frivolous' claim. Appellants, as well as the Pekruls, by virtue of their respective interests in the property were directly affected by the proceedings and should have received actual notice. (Citing authority.)' 568 P.2d at 1155-1156.

And, in respect to inadequacy of price as a basis for setting aside execution of sheriff's sale, see cases

collected in 5 A.L.R.4th 794. See also McCartney v. Frost (1978), 282 Md. 631, 386 A.2d 784.

In fashioning a remedy in this appeal, we take into account that McMillan, in making the purchase at the sheriff's sale, borrowed from the bank in order to meet the purchase price. We can adjust the matters between the parties here, since all are before the Court. It seems proper to say that no party in this case is entitled to recover attorneys fees from any adverse party.

It also seems proper to state that on this record we find no ground for recovery by Peterson against the adverse parties on her several claims. In addition to declaratory relief, Peterson seeks recovery of $10,000 in compensatory damages and $50,000 exemplary damages, and an order that McMillan's contract for sale be terminated by reason of his default. Although it appears that at times Peterson's adversaries, the parties and counsel, acted erringly, we find nothing in the record to indicate they did not believe they were acting in accordance with their legal rights to collect a judgment that had been obtained by Peterson, and on McMillan's part, to purchase the contract for sale which was offered by the sheriff at the execution sale.

The principal issue argued by Peterson on appeal was that the default judgment was void and on that ground the sheriff's sale must be set aside. Peterson contended that the default judgment was void because the default judgment action was not prosecuted as an action foreclosing the mortgage on the real property. Peterson contended that under section 71-1-222, MCA, there is only one action for the collection of a debt secured by a mortgage and that is by foreclosure. It is not necessary for us to reach that issue

- 15 -

in this case, however, because of our determination here that the judgment in any event has not become final and that the sheriff's sale should be set aside.

There would be little purpose, moreover, in our setting aside the default judgment against Peterson. Her counsel admitted to the District Court at the time that she owed the money on the note, and had no defense to the amount thereof. We take that into account in fashioning the remedy in this case.

Accordingly, summary judgment granted by the District Court against Peterson in this cause is vacated and reversed; the cause is remanded to the District Court for entry of a declaratory judgment in favor of Peterson with these instructions:

(1) The sheriff's certificate of sale dated December 2, 1981 and any other document of the sheriff selling Peterson's interest in the contract for deed to McMillan are annulled and vacated.

(2) The contract for sale of real estate between Peterson and McMillan is reinstated.

(3) Peterson shall credit McMillan with payment on the principal due on November 1, 1981, on the contract for sale of real estate in the sum of $35,500 ($39,000, less the $3,500, awarded as attorneys fees).

(4) After the credit is applied by Peterson to the McMillan contract, the remaining principal balance due on said contract shall accrue interest payable by McMillan at the rate of 8½% *7%* per annum from and after the date of remittitur of this cause from this Court to the Gallatin County District Court. McMillan shall make annual payments under the contract of $9,912 beginning November 1, 1984 and

continuing thereafter as provided in the contract for sale of real estate until the balance of the purchase price together with all accrued interest shall have been fully paid by him on or before November 1, 1990. All remaining terms of the said contract for sale of real estate shall be and remain in full force and effect as between Peterson and McMillan, and subject to the provisions thereof.

(5) Summary judgment shall be entered by the District Court in favor of the Montana Bank of Bozeman and the Estate of George J. Stublar deceased, and Warren A. McMillan, and against Hilda M. Peterson on her remaining claims in this action.

(6) The judgments outstanding against Peterson and in favor of George J. Stublar in civil cause no. 27580 in the Gallatin County District Court shall be satisfied by the parties or by order of the District Court.

(7) No costs shall be awarded in this action.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

- 17 -

I respectfully dissent from the majority opinion.

At the outset it must be made clear that the plaintiff here, Hilda M. Peterson, did not file a motion seeking relief under Rule 60(b) M.R.Civ.P., in the case of George J. Stublar vs. Hilda M. Peterson, District Court of the Eighteenth Judicial District of the State of Montana in and for the County of Gallatin, cause no. 27580. In that case Stublar obtained a judgment against Peterson for $26,000 together with accrued interest in the amount of $2,919.48 plus 12% interest on the sum of $28,919.48 from January 22, 1980, to date, together with costs of $22.80 and attorney's fees in the sum of $3500. The findings of fact, conclusions of law, and judgment of the court were contained in one document and were mailed to Peterson's counsel. Counsel's deposition, part of the record in that case, showed that the document was received by counsel. Thereafter, the judgment became final for purposes of satisfaction. No appeal was taken. No supersedeas was filed. Therefore, the sheriff's sale which followed could be held.

An execution was issued which incorrectly identified the date of judgment as 24th day of July, 1981. This was simply a clerical mistake. The judgment referred to above, entered by Judge Gary on November 20, 1981, was clearly the judgment upon which the execution, dated November 23, 1981, was issued. Thereafter, the appropriate notice of sheriff's sale was posted. The personal property, in the form of the contract of sale of real estate dated October 14, 1976, between Peterson and McMillan, was sold to McMillan for the sum of $39,000. A return of sale was made by the deputy sheriff dated December 2, 1981, one day following the sale on

18

December 1, 1981. No relief from these proceedings was instituted in cause no. 27580.

Hilda M. Peterson instituted a declaratory judgment action in the Eighteenth Judicial District of the State of Montana, in and for the County of Gallatin, District Court cause no. DV-82-132 making a collateral attack upon the judgment entered in cause no. 27580. This collateral attack was premised upon the idea that Peterson could not waive her right to insist upon foreclosure. This of course is not the law. Peterson could have set forth as a matter of defense, the "single action" statute and by failing to do so cannot be heard to complain. VandeVeegaete v. VandeVeegaete, 243 P. 1083, 75 Mont. 52; State Savings Bank v. Albertson, 102 P. 692.

This is not a case where relief from a judgment can be accorded on the basis of fraud on the court or lack of jurisdiction over the person or subject matter. Peterson was before the court in cause no. 27580, Stublar v. Peterson, represented by counsel. Counsel advised the court there was no defense and therefore the court entered judgment. Judgment was served upon Peterson's counsel. The judgment was final. No appeal was taken from the judgment. No motion for Rule 60(b) relief was filed in that case.

The majority raises the issue of lack of finality apparently relying upon authority that failure to serve notice of entry of judgment stays the time for filing a notice of appeal. However, that issue is not before this Court. The issue here is whether the sale which followed the entry of a judgment was a valid sale and whether the sale can, in any event, be attacked in this proceeding.

The majority opinion seems to turn upon the idea that an independent action can attack technical defects in an

execution sale on the basis of language quoted from Rule 60(b) which states, in relevant part:

> ". . . This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court."

First, it should be noted that this language does not grant any rights to the court in an independent action. The language simply states nothing in the rule shall limit the power of a court to entertain an independent action.

An independent action clearly can attack a "proceeding" where the law required that an aggrieved party be notified of the "proceeding" and was not or where there was a fraud on the court.

This is not a case for an independent action as indicated in the majority opinion because (1) the law did <u>not</u> require that Peterson be personally notified of the sale which was an in rem proceeding and (2) there was no <u>fraud</u>. Worse yet this new law was made without benefit of briefs or argument as the Court raised the issue.

This action is, pure and simple, a collateral attack upon a judgment in another case. There is absolutely no basis for the relief granted by the majority. This is simply another indication of this Court ignoring the law to achieve what the Court members conscientiously believe to be an equitable result. There is great risk in taking this action because there is no opportunity for counsel to brief and argue the Court invented theory granting relief. Again, I find the majority acting as "philosopher kings" at great risk to our system of justice.

Justice

Justice John C. Sheehy, specially concurring:

I am pleased to accept the accolade of "philosopher king" conferred by our fellow jurist. My Irish father always maintained he was descended from the kings of Kerry. He would be pleased to know we now again supersede the peerage, and can sit above the salt.

I like being a philosopher also. He is one who by Greek definition is a lover of wisdom. The task of wise judges is always to make the law what it ought to be--the servant of, and not the tyrant of, humans.

_John C. Sheehy_
                        Justice

IN THE SUPREME COURT OF THE STATE OF MONTANA

---

No. 83-523

---

HILDA M. PETERSON,

Plaintiff and Appellant,

v.

MONTANA BANK OF BOZEMAN, N.A.
as Personal Representative of
the Estate of George J. Stublar,
deceased and WARREN A. McMILLAN,

Defendants and Respondents.



FILED

SEP 27 1984

Ethel M. _____
CLERK OF ____
STATE ___

---

ORDER ON PETITION FOR REHEARING

---

On consideration of McMillan's petition for rehearing, and the replies of Montana Bank of Bozeman and Peterson thereto,

IT IS ORDERED:

1.    The rate of interest on the reinstated contract between Peterson and McMillan shall be seven percent (7%) per annum, and not 8½ percent per annum (paragraph (4), p. 16, slip opinion).

2.    The petition for rehearing is otherwise denied.

3.    Copies to counsel of record.

DATED this 27th day of September, 1984.

_____
Chief Justice

_____

_____

- 1 -

_____

_____

_____

_____
Justices