No. 84-185

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN RE THE MARRIAGE OF
GEORGE R. WOOLSEY,

       Petitioner and Respondent,

  and

GERTRUDE JOSUCKS WOOLSEY,

       Respondent and Appellant.

---

APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Morales & Volinkay; Richard Volinkaty, Missoula,
Montana

    For Respondent:

        Jeffrey H. Langton, Hamilton, Montana

---

Submitted on Briefs: Oct. 4, 1984

Decided: December 13, 1984

Filed: DEC 13 1984

*Ethel M. Harrison*

Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Ernestine Woolsey Miller, as personal representative of her mother's estate, appeals from the order of the District Court, Fourth Judicial District, Missoula County, refusing to reopen and modify a 1976 marital dissolution decree terminating the marriage of George and Gertrude Woolsey.

We affirm the order of the District Court.

The facts are unique. George and Gertrude were married in Bellefield, North Dakota on November 29, 1945. They moved to a small farm in the Bitteroot Valley near Stevensville, Montana. The couple adopted two children, Clayton and Ernestine. George worked on the farm and Gertrude taught school. Gertrude contributed her earnings and her services to the farm and family. The title to the family farm was held by George and Gertrude as joint tenants with right of survivorship.

In July 1975, Gertrude suddenly vanished from the Stevensville area without notice or word to George or other family members. Her whereabouts since are completely unknown except that George has testified that he received a telephone call from Gertrude in September or October 1975, which prompted him to travel by bus to Chicago, Illinois, in search of his wife. George testified that after he arrived in Chicago, he talked to Gertrude twice in the bus depot and in one conversation, Gertrude told him she was not coming home and that he could keep all of the couple's property. Inconsistencies in his testimony regarding the 1975 Chicago trip were shown on his cross-examination.

On March 30, 1976, George filed a petition in the Missoula County District Court for dissolution of his marriage to Gertrude. In his complaint, he alleged that he did not request the assistance of the court in any division of real and personal property which may have been acquired during the marriage.

On the allegation that Gertrude's whereabouts were unknown, and the return of the sheriff of Ravalli County that she could not be found in that county, the District Court ordered service of summons upon Gertrude by publication, which was duly carried out. On June 10, 1976, the District Court entered its decree of dissolution of the marriage between the parties, decreeing with respect to the marital property as follows:

"2. That the settlement of the ownership of real and personal property has been made between the parties and the Court makes no order with respect thereto."

Thus, following the decree of dissolution, the title to the real estate of the parties remained in joint tenancy with right of survivorship, and the husband took possession of the personal property of the parties.

On June 3, 1983, George commenced a quiet title action in Ravalli County District Court naming Gertrude, the two adopted children Ernestine and Clayton Woolsey, and all persons unknown as defendants. The object of the quiet title action is to quiet the title in George to the real property, and also to certain United States war bonds, automobiles, and Gertrude's interest in a teacher's retirement plan.

In September 1983, Ernestine commenced proceedings in the Missoula County District Court in which it was determined that her mother Gertrude was presumed dead, she having been

missing for some seven years. Ernestine was appointed personal representative of Gertrude's estate. As personal representative, Ernestine filed a motion in the marriage dissolution action between George and Gertrude to reopen and modify the decree of dissolution regarding the property disposition.

The basis of Ernestine's motion to reopen the marriage dissolution decree is that the representations of George to the effect that the parties had mutually adjusted their rights to their property was fraudulent, and that it was the mandatory duty of the District Court at the time of the dissolution to distribute equitably the marital property between the parties.

George filed a motion in the marriage dissolution cause to quash or dismiss Ernestine's motion to reopen the dissolution decree. On January 11, 1984, the District Court granted the motion to quash or dismiss the motion to reopen, holding that Ernestine's motion was untimely under Rule 60(b)(3), M.R.Civ.P., and that because she had chosen a remedy, she could not bring an independent action to set aside the marital dissolution decree under the residual clause of Rule 60(b), M.R.Civ.P.

Section 40-4-202, MCA, provides that in a proceeding for dissolution of marriage, the District Court, "shall . . . finally, equitably apportion between the parties the properties and assets belonging to either or both . . ." We have stated that this language of the statute is a mandate to the District Court. In Re Marriage of Blair (1977), 178 Mont. 220, 583 P.2d 403, 405. We have also said that before a determination be made as to dividing the property, there must be a determination of the net worth of the marital

- 4 -

estate. Hamilton v. Hamilton (1980), 186 Mont. 282, 607 P.2d 102, 103; Peterson v. Peterson (1981), 195 Mont. 157, 636 P.2d 821, 824. It is petitioner's contention that the court failed in a mandatory duty respecting the property and as such the court having jurisdiction of the dissolution must proceed now to determine between the parties their rights to the marital property.

Section 40-4-208(3), MCA, states that the provisions as to a decree as to property disposition may not be revoked or modified by a court except upon the written consent of the parties, or "if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Section 40-1-105, MCA, makes the Montana Rules of Civil Procedure applicable to all proceedings relating to marital dissolutions. Therefore, Rule 60(b), M.R.Civ.P. governs when and if a property disposition may be revoked, reopened or modified. Rule 60(b)(3), limits the right of a court to relieve a party from a final judgment on the basis of intrinsic or extrinsic fraud to a motion made not more than 60 days after the judgment has been taken or entered. On that basis, the District Court held that Ernestine's motion to reopen the decree of dissolution was untimely. There is no attack by Ernestine in this case that the District Court had no personal jurisdiction of Gertrude in order to render judgment in the marital dissolution cause.

The critical point in this lawsuit is that the marital dissolution decree, as between George and Gertrude, had become final. No appeal was taken by Gertrude from the final judgment. A district court has no jurisdiction to allow a defaulting party after publication of summons to appear in the same action under Rule 60(b) more than 60 days after

- 5 -

rendition of judgment except to set aside a judgment under the residual clause of Rule 60(b). This is so even though the court here admittedly failed in its mandatory duty to apportion equitably the marital property:

> "Under the Uniform Marriage and Divorce Act, section 40-4-201(2), MCA, it was the duty of the court to inquire into the conscionability of the property settlement before it was approved, or it was the duty of the wife to ask the court to inquire into the conscionability of the decree before it was finally approved. When neither the court nor the wife did this, this issue became final when the appeal time expired. The wife had no right six years later to attempt to relitigate this issue which the law requires to be decided before the entry of the decree if either the court or one of the parties questions the conscionability of the decree. Res judicata clearly bars this claim . . . Res judicata applies to issues that have been raised and decided, and to those that should have been raised and decided, and which are necessarily included in a final judgment." Hadford v. Hadford (Mont. 1981), 633 P.2d 1181, 1184, 38 St.Rep. 1308.

We iterated this proposition in Marriage of Lance (1981), 195 Mont. 176, 635 P.2d 571, 580-581:

> "It is too late now for him [Lance] to attack the decree on the ground that the District Court had failed to determine the net worth of the parties, or abused its discretion in failing to determine the value of each asset, or committed error in sawarding custody of the minor children, or in setting forth visitation rights, or in granting spousal maintenance. John not having appealed from the final decree in timely fashion, the decree has become conclusive as to all issues raised by the pleadings actually litigated and adjudged that is shown on the face of the decree and necessarily determined in order to reach the conclusion announced (citing authority)."

The right of Ernestine as personal representative of the estate of her deceased mother to move the court for relief from judgment entered by fraud against the decedent is undoubted. Gillen v. Gillen (1945), 117 Mont. 496, 159 P.2d 511. However, Ernestine's right in that regard is no greater than the decedent herself could have exercised had she sought the relief.

- 6 -

The District Court determined that because Ernestine's motion for relief was not timely under Rule 60(b)(3), she had chosen a remedy, and therefore could not proceed under the residual clause of Rule 60(b). While we do not reach the question of the propriety of that position of the District Court, it is nevertheless clear in this cause that Ernestine may not bring her mother's case within the provisions of the residual clause.

In Peterson v. Montana Bank of Bozeman, et al. (Mont. 1984), ___ P.2d ___, 41 St.Rep. 1575, 1580, we said:

> "Rule 60 was adopted in the federal court system, and by us, in order that substantial justice might be accomplished. We find in Rule 60(b) in the early part of its language, six different grounds upon which a court may relieve a party from a judgment, order or proceeding. There is a stricture, however, in that the judgment, order or proceeding must be final, to justify relief under the six grounds then set out. However, Rule 60(b) does not end there. There is a residual clause which is a broad recognition of the power inherent to a court. It contains this provision:
>
> "'. . . This rule does not limit the power of the court to entertain an independent action to relieve a party from a judgment, order or proceeding, or to grant relief to a defendant not actually personally notified as may be required by law, or to set aside a judgment for fraud upon the court.'"

With respect to reopening a judgment for fraud upon the court, we have stated in Lance, 195 Mont. at 179, 180:

> "It is obvious that John's motion to reopen the decree, filed 1 1/2 years after the decree had been entered, is not timely as a 60 day motion under Rule 60(b), M.R.Civ.P. There are no time limits, however, to such motion if in essence the motion is one to reopen or vacate a judgment because of a fraud upon the court. (Citing authority.) However the fraud, to constitute grounds for reopening the decree must be extrinsic, that is it must be such fraud as denied the adversary an opportunity to have a trial or to fully present his side of the case. (Citing authority.)
>
> "Extrinsic fraud upon the court, that is representations or concealments made during the court proceedings, assuming they are false or fraudulent are nevertheless not grounds for

- 7 -

reopening a decree of judgment. (Citing authority.)"

Ernestine's motion to reopen the dissolution decree necessarily depends upon alleged misrepresentations or concealments by George to the court prior to the entry of the dissolution decree. If Gertrude had appeared in the divorce action, and the representations were indeed false, such representations could have been contested by her. As we have stated, it is too late, once the judgment has become final, for a defaulting party to raise issues of misrepresentations which could have been contested in the cause prior to the entry of the judgment from which relief is sought.

Accordingly, we affirm the District Court.

_____
John C. Sheehy
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices