No. 96-669

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


IN RE THE MARRIAGE OF

DEANNA K. SCOTT,

Petitioner and Appellant,

v.

GEORGE M. SCOTT,

Respondent and Respondent.


APPEAL FROM:     District Court of the Eighteenth Judicial District,
                 In and for the County of Gallatin,
                 The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

Richard Larson, Chronister, Moreen & Larson, Helena, Montana

For Respondent:

James D. McKenna, Walsh & McKenna, Bozeman, Montana



Submitted on Briefs: March 20, 1997

Decided:    June 17, 1997
Filed:


_____
Clerk

Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Appellant Deanna K. Scott (Dee) appeals the decision of the Eighteenth Judicial District Court, Gallatin County, dissolving her marriage to Respondent George M. Scott (George) and dividing their marital estate. We affirm in part, reverse in part and remand.

ISSUES

Dee raises the following issues on appeal:

1. Did the District Court abuse its discretion in its valuation of miscellaneous personal property in the marital estate?

2. Did the District Court abuse its discretion in vacating a previously entered conclusion of law which granted Dee an "equalization payment" of $5,582?

3. Did the District Court abuse its discretion in vacating a previously entered conclusion of law which required George to compensate Dee for lost rental income?

FACTS

This Court previously remanded this case in the unpublished decision In re Marriage of Scott (Mont. No. 95-003, decided August 24, 1995) (Scott I). In Scott I, George raised seven issues on appeal. Of the seven, this Court affirmed four and remanded three. Two of the three issues remanded in 1995 are faced by this Court again in this appeal because Dee contends that the District Court, in addressing the two issues, did not comply with this Courtþs order of remand. Dee also contends the District Court erred by revisiting an issue which was affirmed by this Court in Scott I.

After the partiesþ separation, George continued to exercise control over the marital home by living there intermittently, storing his personal property there, and allowing certain relatives to live there, all without Deeþs consent. In Scott I, the District Court determined that Georgeþs actions prevented Dee from renting the home to a third party, and awarded her $11,830 in lost rental income. George appealed and this Court determined that the District Court lacked sufficient facts to support such an award. We noted that the District Court did not state the time period the house should have been rented; the times when either or both parties were using the house; or if Georgeþs relatives who lived there paid rent and, if so, in what amount. In short, we concluded that "there [was] an insufficient record for us to determine how the District Court made its decision." Slip Op. at 6-7. We therefore remanded this issue to the District Court.

In Scott I, George also appealed the District Courtþs valuation of the marital

property. The parties agree that the valuations contained in the District Courtþs findings of fact in Scott I were inconsistent with the valuations contained in its conclusions of law. This discrepancy apparently arose because the District Court adopted one partyþs property valuations in its findings of fact and the other partyþs property valuations in its conclusions of law. Not surprisingly, the numbers did not match. Therefore, this Court in Scott I remanded and directed the District Court "to correct the discrepancy in property values between its findings of fact and its conclusions of law." Slip Op. at 7.

Also in Scott I, this Court affirmed several aspects of the property division which George had asserted were erroneous. In particular, the District Court had awarded Dee a payment of $5,582 to "equalize more closely the cost of maintaining marital property," in recognition of the fact that she had been responsible for maintaining much of the estate during the marriage. George appealed this monetary award and this Court affirmed it without comment.

In this appeal, Dee revisits the above issues and takes exception to how the District Court responded to this Courtþs order of remand. First, the District Court reconciled the property valuations in a manner Dee contends was erroneous. Second, since the courtþs revaluation of the marital estate resulted in Dee receiving a larger share of the estate, the District Court also vacated its earlier equity award of $5,582. Dee contends the disallowance of this award was also erroneous since the award had been specifically affirmed by this Court in Scott I. Last, the District Court determined that the issue of the use of the house was "moot" and declined to award Dee any amount for lost rental income. Dee contends the District Court erred in this determination as well. We affirm in part, reverse in part and remand with directions.

STANDARD OF REVIEW

The standard of review of a district courtþs findings of fact is whether the findings are clearly erroneous. The standard of review of a district courtþs conclusions of law is whether the conclusions are correct. In re Marriage of Cowan (Mont. 1996), 928 P.2d 214, 217, 53 St.Rep. 1250, 1251-52 (citing In re Marriage of Brandon (1995), 271 Mont. 149, 151-52, 894 P.2d 951, 952-53). See also In re Marriage of Bradshaw (1995), 270 Mont. 222, 229, 891 P.2d 506, 510. This Court is not bound by a lower court's conclusions of law, but remains free to reach its own conclusions. Bradshaw, 891 P.2d at 510 (citing In re Marriage of Danelson (1992), 253 Mont. 310, 833 P.2d 215).

DISCUSSION

1.   Did the District Court abuse its discretion in its valuation of miscellaneous personal property in the marital estate?

The District Court used one valuation in it findings of fact and another valuation in its conclusions of law.  This Court remanded the matter to the District Court, with instructions to correct the valuation discrepancy.  To do so, the District Court on remand substantively adopted the property valuations contained in its original findings of fact. It did not, however, expressly state that its new findings and conclusions were based on the valuations contained in the findings of fact in Scott I.

In asserting that the District Court erred in its valuations on remand, Dee asserts three specific errors.  First, she asserts that the District Court did not set forth how it arrived at its  finding that the new valuations left her with $11,736 more than George. This figure, however, is taken directly from the Scott I findings of fact, and is arrived at by merely subtracting the amount awarded to George from the amount awarded to Dee. While the District Courtþs order on remand may have been clearer if this mathematical computation had been explicitly set forth, a careful reading of the new order, together with the old, reveals the District Courtþs analysis.

Second, Dee asserts that the District Court erred by not setting forth the actual valuations it used in its new findings of fact.  Again, while it might have been less confusing had the District Court done so, a close reading of the order on remand reveals that the valuations adopted by the District Court were those contained in the findings of fact in Scott I.  Dee does not assert, nor do we conclude, that the use of the valuations from the Scott I findings of fact were otherwise erroneous.

Third, Dee asserts that the District Court exceeded its authority on remand by going beyond this Courtþs directive to "correct the discrepancy in property values" to actually reapportion certain assets.  This allegation is the basis for Issue 2, and does not independently serve to invalidate the District Courtþs decision to use the valuations contained in the Scott I findings of fact for purposes of valuing the marital estate.  The adoption of the valuations listed in the Scott I findings of fact as the actual values of the items in dispute served to correct the discrepancy which had necessitated a remand.  We affirm the District Court on Issue 1.

2.   Did the District Court abuse its discretion in vacating a previously

entered
conclusion of law which granted Dee an "equalization payment" of $5,582?

The District Courtþs correction of the personal property values had the effect of increasing the dollar value of Deeþs share of the marital estate. After the valuation adjustment, the District Court found that Dee received $11,736 more in property than George. The District Court apparently determined that such a disparity in the property award served to meet the courtþs stated goal of giving Dee a proportionately larger share of the marital estate in consideration of her proportionally larger contribution to the estateþs maintenance. It therefore vacated the additional award of $5,582, which it had apportioned to Dee in the original decree in order to equalize the cost of maintaining the marital estate. Dee notes that this Court affirmed this disputed award in Scott I, and therefore contends that the District Court erred in vacating it on remand.

In asserting that the District Court erred, Dee contends that the courtþs earlier decision on this issue was res judicata or, in the alternative, that George is collaterally estopped from relitigating it. While we agree that the District Court lacked jurisdiction to disturb the previously affirmed award, we base our determination on law of the case, not on res judicata or collateral estoppel.

In Fiscus v. Beartooth Electric Cooperative, Inc. (1979), 180 Mont. 434, 591 P.2d 196, this Court defined the interrelated theories of res judicata, collateral estoppel, and law of the case. We noted that res judicata is a final judgment which, when rendered on the merits, is an absolute bar to a subsequent action between the same parties or those in privity with them, upon the same claim or demand. Fiscus, 591 P.2d at 197 (quoting Western Montana Prod. Credit Assþn v. Hydroponics, Inc. (1966), 147 Mont. 157, 161, 410 P.2d 937, 939). See also Hollister v. Forsythe (1996), 277 Mont. 23, 27, 918 P.2d 665, 667. We defined collateral estoppel as a final judgment which bars the parties, or those in privity with them, from relitigating matters which were previously necessarily litigated and determined, even if the claim or demand in the subsequent action is different. Fiscus, 591 P.2d at 197 (quoting Western Mont. Prod. Credit Assþn, 410 P.2d at 939). See also Estate of Eide v. Tabbert (1995), 272 Mont. 180, 183-84, 900 P.2d 292, 295. In other words, res judicata is "an absolute bar to a subsequent action," while

collateral estoppel "prevents the parties from relitigating only those matters that were determined." Fiscus, 591 P.2d at 197. Res judicata, therefore, also properly is referred to as "claim preclusion," while collateral estoppel also properly is referred to as "issue preclusion." Brault v. Smith (1984), 209 Mont. 21, 26, 679 P.2d 236, 238.

In contrast, the law of the case doctrine "expresses the practice of courts generally to refuse to reopen what has been decided. It expresses the rule that the final judgment of the highest court is the final determination of the parties' rights." Fiscus, 591 P.2d at 197 (quoting Blackþs Law Dictionary (Rev. 4th Ed.1968)). This Court has stated that

[t]he rule is well established and long adhered to in this state that where upon an appeal, the Supreme Court, in deciding a case presented states in its opinion a principle or rule of law necessary to the decision, such pronouncement becomes the law of the case, and must be adhered to throughout its subsequent progress, both in the trial court and upon subsequent appeal.

Fiscus, 591 P.2d at 197 (quoting Apple v. Edwards (1949), 123 Mont. 135, 139-40, 211 P.2d 138, 140). See also State v. Black (1990), 245 Mont. 39, 44, 798 P.2d 530, 533.

Here, the parties appear in a second appeal of the same case which was reviewed by this Court previously. The parties and issues are identical to those addressed in Scott I. In that previous decision, this Court determined that only three issues warranted remand; we affirmed without comment all other issues raised on appeal, including the propriety of the $5,582 award to Dee in consideration of her maintenance of the marital estate. Having conclusively ruled on the propriety of that award, our determination became the law of the case so far as that specific issue was concerned, and the District Court lacked jurisdiction to exceed the scope of this Courtþs order of remand to revisit and vacate the award.

Further, we note that the District Court in Scott I justified awarding this additional amount to Dee on the grounds that she had expended more time and effort in maintaining the marital estate during the time of the marriage. This rationale cannot be invalidated simply by the District Courtþs subsequent correction of property valuations; to do so would mean that Dee should now be deemed to have done less to conserve the marital estate. In any event, this Courtþs affirmation of the award in Scott I became the law of the case, which the District Court was without authority to disturb. The District Courtþs order vacating the $5,582 payment to Dee is reversed.

3. Did the District Court abuse its discretion in vacating a previously entered

conclusion of law which required George to compensate Dee for lost rental income?

Lastly, Dee argues that the District Court erred in vacating on remand its award to her for lost rental on the marital home. In Scott I, the District Court determined that George's "failure to rent the house in Bozeman while neither he nor [Dee] were occupying it amounts to a lost income opportunity, effectively a dissipation of the marital estate," justifying an award of lost rental income to Dee. George appealed this finding, and this Court noted that the District Court record was insufficient to allow meaningful review and that, consequently, this Court lacked sufficient facts to determine whether or not the award was justified. We therefore remanded the matter to the District Court "for reconsideration of its award of lost rental income to [Dee]." We further ordered the District Court to "receive further evidence and then enter appropriate findings of fact and conclusions of law supporting its decision to either award or not award such rent." Scott I, Slip Op. at 7.

On remand, the District Court determined that George had in fact occupied the marital home during the period in dispute. It therefore concluded that Dee was not entitled to lost rental income because there was no period during which the house was truly empty and available for rental. Dee appeals, asserting that the District Court abused its discretion by disallowing the lost rental payments.

In Scott I, this Court made an affirmative, final determination regarding the disputed maintenance award to Dee, as discussed above. In contrast, we declined to make such a final determination regarding the issue of lost rent. Instead, we directed the District Court to revisit the issue de novo and to set forth facts sufficient to support its determination. Our intention that the District Court address the issue anew is embodied by this Court's order on remand, which directed the District Court to "enter appropriate findings of fact and conclusions of law supporting its decision to either award or not award such rent." (Emphasis added.) Therefore, contrary to Dee's assertion, the issue before the District Court on remand was not simply what amount of rent was due to Dee, but whether any rent was due at all.

In challenging the District Court's determination on remand that she was not entitled to any payment for the lost opportunity to rent the marital home, Dee argues that "since sufficient evidence was presented concerning the rental proceeds that could have been realized, and since there was no dispute that George in fact precluded Dee from renting the house, the district court's disallowance of lost rental payments amount

to an abuse of discretion."  We disagree.

The crucial question in resolving this issue was whether or not George continued to occupy the marital home during the period before the divorce, when Dee contends it could have been rented.  Contrary to Deeþs assertion, the District Court could not disregard the issue of whether George was in fact occupying the house and merely confine itself to whether the house could have been rented had he been absent and, if so, for what amount.  By this rationale, any party to a divorce who vacates the marital home could demand lost rent from the party who remains in the home, simply on the theory that the house could be rented if  the remaining party vacated as well.  Dee cites no authority to support such a broad proposition, nor have we been able to discover any.

The initial and crucial determination that George prevented Dee from renting the house and thereby dissipated the marital estate was premised on the finding that neither he nor Dee were occupying the house during the period in question.  On remand, the District Court found that George had in fact continued to occupy the home and, consequently, it was never available to rent to a third party.  Such a reversal is not inherently erroneous.  When this Court directs the District Court to revisit a given issue and indicates that it should do so de novo, the District Court is not constrained to finding the same way it did initially.  Were it so constrained, there would be no point in ordering a remand.

The question to be reviewed by this Court, therefore, is whether the District Courtþs finding that George continued to occupy the home during the period in question was clearly erroneous.  During the hearing on remand, George testified that he came home to the house approximately every two weeks during the first three years of the five years in dispute.  He further testified that he returned to the house every few months thereafter, whenever his job allowed him to return home.  He continued to use the house as his residence and to claim it as his residence on his driverþs license and car registrations.  In light of this testimony, which was uncontroverted, we cannot say that the District Courtþs finding that George continued to occupy the house was clearly erroneous.  The District Court did not abuse its discretion in concluding that the house was not available for rent during the disputed period.    We affirm Issues One and Three.  We reverse Issue Two and remand this matter to the District Court for entry of judgment in accordance with this opinion.

/S/  WILLIAM E. HUNT, SR.

We Concur:

/S/  J. A.  TURNAGE
/S/  JIM REGNIER
/S/  W. WILLIAM LEAPHART
/S/  JAMES C. NELSON