No. 90-420

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

FRED G. NIMMICK AND ANN G. NIMMICK,

    Plaintiffs and Respondents,

        v.

DALE P. HART,

    Defendant and Appellant.

*********************************************

No. 90-204

DALE P. HART,

    Plaintiff and Appellant,

        v.

ALLEN E. ERICKSON, MELBA E. ERICKSON,
FRED G. NIMMICK, ANN M. NIMMICK,
ROBERT E. WRIGHT, DONNA MAE WRIGHT,
CHARLES R. TAYLOR, and SAM MARTIN,

    Defendants and Respondents.

**FILED**

MAR 21 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                In and for the County of Missoula,
                The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

                Thomas W. Trigg, Missoula, Montana

                Terry A. Wallace, Missoula, Montana

1

For Respondent:

Dirk A. Williams, Snavely & Phillips, Missoula, Montana

Richard A. Weber, Jr., Koch, McKenna, Goheen, Boggs & Weber, Hamilton, Montana

Submitted on briefs: January 17, 1991

Decided: March 21, 1991

Filed:

_____
Clerk

2

Justice Terry N. Trieweiler delivered the Opinion of the Court.

In this consolidated action Dale P. Hart appeals from the Fourth Judicial District Court orders granting summary judgment in favor of Charles R. Taylor in cause no. 66726, and Fred G. Nimmick and Ann M. Nimmick in cause no. 66726 and cause no. 71128. We affirm in part and reverse and remand in part.

The parties raise several issues which we restate as follows:

As to Taylor:

I. Whether the District Court erred in determining Hart failed to plead failure of consideration as an affirmative defense.

As to the Nimmicks:

II. Whether the District Court erred in finding no misrepresentation and fraud on the part of the Nimmicks.

III. Whether the District Court erred in collaterally estopping Hart from raising the issues of rescission and misrepresentation concerning his purchase of Terrace.

IV. Whether the District Court erred in dismissing Hart's affirmative defense of accord and satisfaction.

V. Whether the District Court erred in finding that the Nimmicks had no obligation to mitigate their damages.

VI. Whether the District Court erred in dismissing Hart's counterclaims.

This cause of action is based on a series of transactions involving the Terrace Mobile Home Park (Terrace) located near East Missoula, Montana. Terrace was originally owned by the Ericksons. The Ericksons sold Terrace by contract for deed to Furman H.

2

Stockton and Clare E. Stockton on September 25, 1978. The Stocktons then sold Terrace by contract for deed to Fred C. Nimmick and Ann M. Nimmick on November 5, 1982. On April 16, 1984, the Nimmicks in turn sold the property by contract for deed to Robert E. Wright and Donna Mae Wright.

The Wrights were indebted to Charles R. Taylor on a promissory note. After the debt to Taylor arose, Wrights purchased Terrace from the Nimmicks. Subsequently, Taylor acquired a judgment against the Wrights for the debt owed on the promissory note. Taylor then filed a judgment lien against the Wrights' interest in Terrace.

Taylor scheduled an execution sale of the Wrights interest in Terrace to satisfy his judgment against the Wrights. The Wrights were on the verge of losing their interest in the property through the foreclosure of Taylor's judgment lien when Samuel Martin, a realtor, contacted Dale Hart in an effort to stave off the impending foreclosure. Previously Martin had been the realtor that handled the Stockton-Nimmick transaction and the Nimmick-Wright transaction.

The involvement of Hart in Terrace took place in two stages. In order to avoid the sale, the Wrights paid $7,500 to Taylor and agreed to pay the balance of the judgment ($7,500 within one year upon a specified schedule). Hart gave the Wrights the above $7,500 to pay Taylor to avoid the execution sale. In return, Hart received a partial assignment of one-third of the Wrights' purchasers interest in Terrace. Hart also agreed to pay the

3

Wrights an additional $7,500 in January, 1986, to pay off the remaining judgment debt to Taylor.

Despite this payment, on November, 1985, the Wrights defaulted on the underlying contract payments which were to be made to the Ericksons, the title holders of the property. As a result, the Ericksons issued a notice of default and acceleration. To overcome this default, Hart purchased all of the Wrights' interest in the property and agreed to assume all of the obligations on Terrace, including the remaining debt ($7,500) to Taylor. In order to cure the Wrights' default to the Ericksons, Hart borrowed $3,500 from the Nimmicks. Hart also gave the Nimmicks a $10,000 promissory note to clear a lien the Nimmicks held against Terrace. The note was secured by a trust indenture on Hart's personal residence.

Next, Hart signed a promissory note to Taylor for $5,000 and Taylor agreed to release his judgment lien. Hart agreed to grant a trust-indenture covering his interest in Terrace, to secure payment to Taylor. Hart also later delivered $2,500 to attorney Dennis Lind for partial payment of his debt to Taylor. Lind then delivered the $2,500 to Taylor's attorney. As the parties agreed, Hart signed a promissory note and a trust indenture with Taylor. Unfortunately, Taylor's judgment lien was not immediately released or satisfied, nor did Hart request Taylor to release or satisfy the judgment lien.

Hart's promissory note to Taylor was due and payable in full on January 12, 1987. On that date, Hart paid Taylor $687 in interest on the promissory note, but failed to pay the full amount

4

of the principal. Other than the single payment of interest on January 12, 1987, Hart has made no payments on the promissory note.

On February 20, 1987, Hart sent a letter to Taylor and other parties stating his intention to rescind all transactions related to Hart's purchase of Terrace. On April 10, 1987, Hart sued Taylor, the Nimmicks, and others in Missoula County Cause No. 66726 alleging that he was fraudulently induced to enter the contract to purchase the mobile home park, and seeking rescission of the contract and damages. Specifically, in regard to Taylor, Hart sought to rescind or avoid Hart's obligations under the promissory note he signed with Taylor. In response, Taylor denied Hart's allegations of fraud, and counterclaimed for payment under the promissory note.

On March 22, 1988, the District Court granted summary judgment in favor of Taylor upon Hart's claims of fraud and misrepresentation. Subsequently, Taylor requested summary judgment upon his counterclaim. That motion was also granted.

Hart now appeals the District Court's second summary judgment order in favor of Taylor.

This appeal also includes Hart's claims of fraud, misrepresentation and rescission against the Nimmicks in cause no. 66726, and the Nimmicks' subsequent complaint against Hart for payment of a promissory note in cause no. 71128.

As we mentioned previously in this Opinion, Hart sued the Nimmicks, along with various other defendants, in cause no. 66726 alleging fraud and misrepresentation on the part of the Nimmicks.

5

Specifically, Hart claimed that the Nimmicks, through their agent realtor Sam Martin, misrepresented the value of Terrace. This misrepresentation, according to Hart, led him to purchase an interest in Terrace. The Nimmicks denied any misrepresentation in the sale of Terrace, and further denied any agency relationship with realtor Martin.

On April 15, 1988, the Nimmicks filed a motion for summary judgment. The court found no agency relationship between the Nimmicks and Martin, and, therefore, any statements that Martin made about Terrace could not be imputed to the Nimmicks. The District Court found no misrepresentations on the part of the Nimmicks in the sale of Terrace.

After the District Court's summary judgment, the Nimmicks served a Notice of Entry of Order upon Hart's counsel on November 16, 1988. The Nimmicks failed to enter a final judgment.

On June 8, 1989, the Nimmicks filed a complaint in cause no. 71128, to collect payment under the promissory note. The facts of the Nimmicks' cause of action on the promissory note are tied into Hart's earlier fraud and misrepresentation complaint surrounding his purchase of Terrace. Hart had given the Nimmicks the note, secured by a trust indenture in Hart's personal residence, in the amount of $10,000 with interest at the rate of 10% on November 21, 1985. As mentioned earlier, Hart gave the note to the Nimmicks in order to clear a lien the Nimmicks had on Terrace.

The record reveals that City Federal Savings Bank also had a trust indenture on Hart's personal residence; the Bank's trust

indenture was superior to the trust indenture held by the Nimmicks. On December 19, 1988, Michael J. Reiley, trustee under the Bank's trust indenture, recorded a notice of trustee's sale.

On February 20, 1989, Nimmicks' attorney sent Hart's attorney an offer to settle Nimmicks' claim for $8,541.25. By its terms, the compromise offer expired on March 15, 1989. Sometime later Hart called the Nimmicks' attorney and offered a deed to his home in lieu of foreclosure. The Nimmicks' attorney by letter to Hart's attorney rejected Hart's offer. Furthermore, the Nimmicks' attorney advised Hart's counsel that the Nimmicks would be filing suit on the note if the Bank foreclosed its trust indenture on schedule.

On May 19, 1989, the Bank's trustee sold Hart's home at a trustee sale. As promised, having lost their security, the Nimmicks sued Hart on the note on June 8, 1989. Hart answered, raised affirmative defenses and asserted counterclaims.

On September 20, 1989, the Nimmicks moved for summary judgment on the complaint and Hart's counterclaims. Following the Nimmicks' motion, briefing by the parties, and oral argument, the District Court granted partial summary judgment to the Nimmicks, and maintained that Hart is collaterally estopped from raising the claims of rescission and misrepresentation, since both of these claims had been adjudicated in District Court in cause no. 66726.

The Nimmicks then moved for summary judgment on the remaining issues, which Hart opposed. The District Court agreed with the Nimmicks and granted the Nimmicks' motion for summary judgment.

The Court entered judgment on June 7, 1990, and the Nimmicks served Notice of Entry of Judgment on June 11, 1990. Hart now appeals both of the District Court's summary judgments.

Both of these cases on appeal are motions for summary judgment. In reviewing orders for summary judgment, the standard of review for this Court is the same as that used by the District Court under Rule 56(c), M.R.Civ.P.; Kronen v. Richter (1984), 211 Mont. 208, 211, 683 P.2d 1315, 1317. Therefore, this Court can find summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), M.R.Civ.P.; Mayer Bros. v. Daniel Richards Jewelers, Inc. (1986), 223 Mont. 397, 399, 726 P.2d 815, 816. Once the record reveals no genuine issue of material fact, the burden of proof shifts to the party opposing the summary judgment motion to present facts of a substantial nature that a material fact issue exists. Mayer, 726 P.2d at 816. Mere conclusory or speculative statements are insufficient to raise a genuine issue of material fact. National Gypsum Co. v. Johnson (1979), 182 Mont. 209, 212, 595 P.2d 1188, 1189; Mayer, 726 P.2d at 816. "The opposing party 'may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial'" (emphasis in original) Mayer, 726 P.2d at 816, citing Rule 56(e),

M.R.Civ.P. With this standard in mind, we will now review the issues presented by the parties.

### Hart v. Taylor

#### I.

Whether the District Court erred in determining Hart failed to plead failure of consideration as an affirmative defense.

Taylor moved for summary judgment on his counterclaim for payment on the promissory note on October 26, 1988. In an effort to rebut Taylor's counterclaim, Hart argued rescission based on failure of consideration. Hart contended that the consideration between the parties failed, due to the fact that Taylor failed to release the judgment lien Taylor held on Terrace. Taylor maintained, and the District Court found, that Hart had not pled failure of consideration as an affirmative defense as required by Rule 8(c), M.R.Civ.P. Furthermore, the Court found that "the letter of rescission from counsel for Hart does not mention failure of consideration for non-payment of the obligation [promissory note] from Hart to Taylor." The District Court then granted Taylor's summary judgment motion.

Rule 8(c), M.R.Civ.P. states in pertinent part:

**Affirmative Defenses.** In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, <u>failure of consideration,</u> . . . and any other matter constituting an avoidance or affirmative defense . . . (Emphasis added.)

The record reveals that Hart failed to affirmatively plead failure of consideration. Hart offers a number of excuses why he

failed to plead the affirmative defense, none of which have any merit on this appeal. "An affirmative defense is generally waived if not set forth affirmatively." Pracht v. Rollins (1989), 239 Mont. 62, 68, 779 P.2d 57, 61; Chandler v. Madsen (1982), 197 Mont. 234, 241, 642 P.2d 1028, 1032. Here, the District Court properly denied Hart's affirmative defense.

In addition to failing to plead his affirmative defense, Hart's claim also fails because Hart received actual consideration from Taylor. Taylor had a judgment lien on the Wrights' interest in Terrace and Taylor scheduled a sale upon a writ of execution. The sale was cancelled when Hart provided funds to the Wrights to make a partial payment to Taylor. Hart then took over the remainder of the Wrights' interest in Terrace and, among other things, agreed to pay Taylor. Hart paid Taylor $2,500, and also signed a promissory note to Taylor and Taylor agreed to release his judgment lien. Hart also agreed to grant a trust indenture in Terrace to secure payment to Taylor. Hart maintains that the release of the judgment lien was consideration for his execution of the promissory note. According to Hart, once Taylor failed to release the judgment lien, the consideration between the parties failed and Hart could properly rescind the contract.

Hart mistakenly contends Taylor's consideration was the release of the judgment lien. The actual consideration in this case which Hart received was Taylor's forbearance, Hart's right to possession of the trailer court, and the receipt of rents from the trailer court.

Release of the judgment lien would not have cleared the title on Terrace. Hart's granting of a trust indenture for the satisfaction of a judgment lien would only have changed the form of the encumbrance and would not have changed the fact of an encumbrance on Terrace. The facts are clear that Taylor granted to Hart what he wanted, which was time to make payment. After Taylor granted that time and patiently awaited payment, Hart rescinded the contract.

Likewise, Hart's rescission letter reflects that failure of consideration was not the basis of Hart's rescission. In pertinent part, the rescission letter states, "The reason for the rescission is that Dale's consent to the various agreements was obtained by the mistake and or fraud of Sam Martin, who represented that he was a partner and agent of some of you, that the mobile home park was in good condition, and that the cash flow and profitability of the mobile home park was substantial. None of these representations were true, and it is clear that the representations were made to defraud Mr. Hart."

Nowhere in Hart's rescission letter is there any mention of Taylor's judgment lien as a basis for failure of consideration. The District Court was keenly aware of this fact in its order granting Taylor summary judgment:

> [T]he letter of rescission from counsel for Hart does not mention failure of consideration as a reason for nonpayment of the obligations from Hart to Taylor. In looking to the essence of the transaction, it is clear that the quid pro quo was not the release of the judgment lien but rather an extension of time due Hart within which to make payment to Taylor. Such payment has not been made and no material facts exist to support Hart's

11

nonpayment of his obligation to Taylor.

Accordingly, the evidence does not support the defense of failure of consideration. Hart received adequate consideration from Taylor. We affirm the District Court grant of summary judgment in favor of Taylor.

## HART V. NIMMICKS

Hart raises a number of issues in his lawsuits with Nimmicks in cause nos. 66726 and 71128. Both of these cases involve numerous motions, orders, affidavits and depositions. In order to sift through the legal quagmire involved in this appeal, we find it necessary to first discuss Hart's cause of action against Nimmicks in cause no. 66726.

On April 10, 1987, Hart filed his complaint in cause no. 66726 against Nimmicks, among others, seeking rescission of the Terrace purchase agreement and punitive damages for fraud and misrepresentation in his purchase of Terrace. Hart's complaint alleged that defendant realtor Sam Martin fraudulently induced him to purchase Terrace. Hart also alleged that the Nimmicks were liable for the acts of Martin because (1) Martin was acting as their agent, and (2) the Nimmicks were partners with Martin. He made no allegation that the Nimmicks acted improperly. The Nimmicks denied allegations that Martin acted as their agent. They also supported their denial with affidavits, in which the Nimmicks established that they did not employ Martin as their real estate agent, nor gave him the authority to act as their real estate agent, in connection with Hart's purchase of Terrace.

12

The Nimmicks moved for summary judgment on April 15, 1988. Later, on November 7, 1988, the District Court granted the Nimmicks' motion for summary judgment. The District Court found no agency relationship between the Nimmicks and Martin. Furthermore, the court found that any misrepresentations made to Hart occurred in 1985 when Martin was employed by the Wrights. The court found no fraud or misrepresentation on the part of the Nimmicks. After the District Court's summary judgment order, the Nimmicks served a Notice of Entry of Order upon Hart's counsel on November 16, 1988. The record reveals that the Nimmicks failed to enter a final judgment with the District Court.

I.

Whether the District Court erred in finding no misrepresentation and fraud on the part of the Nimmicks.

On appeal, Hart argues the District Court overlooked facts which link the Nimmicks to the alleged fraud and misrepresentation in the sale of Terrace. Specifically, Hart claims the District Court disregarded his affidavit, showing the Nimmicks' fraudulent conduct and subsequent motion to amend the pleadings to conform to his filed affidavit. However, there was no allegation of misconduct by Nimmicks in the complaint and their was no proper motion to amend that complaint. A review of the records reveal that Hart, in his responsive brief stated, "Plaintiff demands that the pleadings be amended to reflect the facts set forth in the affidavit of the parties."

The District Court properly ignored Hart's "demand" to amend

13

his pleadings. In order to amend a pleading under Rule 15(a) or Rule 15(b), M.R.Civ.P., a party must file an appropriate motion, and brief accompanying that motion. Rule 2(a), Uniform District Court Rule. "Failure to file a brief in five days by the moving party shall be deemed an admission that the motion is without merit." Rule 2(b), Uniform District Court Rules. Here, Hart did not properly file a motion to amend his pleadings. He attempted to amend his pleadings in his responsive brief. Hart's demand in his responsive brief does not remotely resemble a proper motion, and Hart also failed to file a brief as required under Rule 2(a).

Aside from Hart's attempt to amend his pleadings, Hart's affidavit itself does not support his allegations of fraud and misrepresentation on the part of the Nimmicks. In his affidavit, Hart claims Fred Nimmick made a misrepresentation directly to him. Specifically, Hart stated in his affidavit:

> 10. At this time Fred Nimmick told Hart that the income from the trailer was there, reaffirming what Martin told Hart;
>
> . . .
>
> 13. The representation of Fred Nimmick was not true, and this was a direct representation made by Nimmick to Hart in conjunction with representations made to Hart by Martin, on behalf of the Nimmicks, after Wright's interest in the park had been terminated.

These statements are directly contrary to allegations Hart made in his complaint and deposition. In his deposition, Hart stated that the information he relied on in purchasing his interest in Terrace was the listing agreement by which the Wrights employed Martin as the real estate agent. Hart also testified that the

14

Wrights and Martin made the statements on which he relied in purchasing Terrace. Moreover, Hart admitted that the only writing he relied on was a listing agreement between the Wrights and Martin.

Hart stated in his deposition that the only representation of the Nimmicks was that the trailer park had good value. In his affidavit, he contradicted his deposition testimony and maintains that the Nimmicks also stated that all the trailers were in good condition and income producing. The Nimmicks' alleged statements to Hart do not support a cause of action for misrepresentation. In order for Nimmick's statements to constitute misrepresentation, Hart needed to rely on those statements to his detriment. There is nothing in Hart's affidavit, or in his complaint which indicate that Hart relied on the statements allegedly made by the Nimmicks in his purchase of Terrace. Hart's affidavit and complaint and the District Court record do not support Hart's claim of fraud and misrepresentation against Nimmicks. Accordingly, the District Court properly found no fraudulent conduct or misrepresentations by the Nimmicks.

III.

Whether the District Court erred in collaterally estopping Hart from raising the issues of rescission and misrepresentation concerning his purchase of Terrace.

On September 20, 1989, the Nimmicks moved for summary judgment on their promissory note complaint, and Hart counterclaimed rescission based on misrepresentation. The District Court granted

15

partial summary judgment to Nimmicks, and found that Hart was collaterally estopped from raising claims of rescission and misrepresentation since both of these claims had been adjudicated in District Court in cause no. 66726.

Hart argues that the District Court improperly applied the doctrine of collateral estoppel because the court never entered a final judgment in cause no. 66726. Hart reminds this Court that a final judgment is one of the necessary elements of collateral estoppel. Hart is correct that the District Court never entered a final judgment. The record shows only an order of summary judgment and a subsequent Notice of Entry of Order.

We could at this stage remand this issue to the District Court, since the parties failed to enter a final judgment. A remand on this issue, however, would further delay the adjudication of this case, and unreasonably burden the District Court. This Court turns to its equitable powers to resolve this dilemna of hearing an issue without the necessary final judgment. Under our equity jurisdiction, "We have a duty to determine all of the issues of this case and do complete justice." Peterson v. Montana Bank of Bozeman (1984), 212 Mont. 37, 49, 687 P.2d 673, 679. Our duty to decide equitable issues, such as whether collateral estoppel applies, is defined in section 3-2-204(5), MCA. Under this section, this Court has the power in equity cases and in matters or proceedings of an equitable nature, to review all questions of fact arising on the evidence presented in the record, and to determine the same. Section 3-2-204(5), MCA; Carpenters-Emp. Ret.

16

Tr. v. Galleria Partnership (1989), 239 Mont. 250, 265, 780 P.2d 608, 617. Hart's counterclaim for rescission was an equitable defense. 17A Am.Jur.2d § 540 Contracts.

Under our equitable jurisdiction power we will decide the issue of collateral estoppel, despite the fact the parties did not enter a final judgment. It would be inequitable to remand this issue back to the District Court, especially in light of the fact that the record reveals no evidence of misrepresentation by the Nimmicks, and no support for Hart's claim of rescission. We would be remiss in our duty to "do complete justice" if we failed to resolve the issue of collateral estoppel.

As the District Court properly noted in its order:

The doctrine of collateral estoppel bars litigation of an issue if (1) the issue decided in a prior adjudication was identical with the one presented in the action at bar; (2) the Court in the prior adjudication issued a final judgment on the merits; and (3) the party against whom the collateral estoppel is asserted was a party or had privity with a party in the prior action. Aetna Life and Casualty Insurance Co. v. Johnson (1984), 207 Mont. 409, 673 P.2d 1277, 1279.

Applying this test to the facts in this case, it is clear that collateral estoppel bars Hart from raising the issues of rescission and misrepresentation. These issues were fully litigated by the parties in cause no. 66726.

Despite the fact that the issue of rescission was previously litigated in the earlier District Court case, Hart attempts to resurrect the issue of rescission by now arguing rescission based on failure of consideration and breach of contract. A review of Hart's allegations reveals nothing new from what he alleged in

17

Cause no. 66726. Hart is once again alleging misrepresentations which were previously found to have no basis in fact.

IV.

Whether the District Court erred in dismissing Hart's affirmative defense of accord and satisfaction.

In his answer, Hart raised accord and satisfaction as an affirimative defense. Hart's answer stated:

> The complaint in this case must be dismissed since the claims upon which it is founded are not enforceable because of an accord and satisfaction.

A review of the facts reveal that the District Court properly denied Hart's defense of accord and satisfaction. On February 28, 1989, in a letter from the Nimmicks' attorney, Robert Marcott, to Hart's attorney, Terry Wallace, the Nimmicks made an offer to settle their claims against Hart for $5,000 plus attorney fees of $3,541.25. Marcott set a March 15, 1989 deadline payment of the $8,541.25.

Sometime thereafter Hart called Marcott, and offered the deed to his house in lieu of the Nimmicks' foreclosure on his home. In an affidavit, Hart maintains that the parties orally agreed over the telephone that "the Nimmicks' claim would be settled by the payment of money if the Nimmicks' agreed, and that if they did not, it would be settled by them relinquishing their claim and me signing my house over to them . . . ."

By letter dated May 4, 1989, Marcott wrote to Wallace, rejecting Hart's offer of a deed to his home in lieu of foreclosure, and enclosed a key Hart apparently had left at

18

Marcott's office.

Now, Hart claims the Nimmicks created an accord through the oral agreement between Hart and Marcott. Furthermore, Hart claims that the Nimmicks failed to satisfy the new accord between the parties. The Nimmicks contend their offer on February 28, 1989, set the parameters of settlement including a deadline for payment of March 15, 1989. The Nimmicks maintain there was no accord, so there could not have been an accord and satisfaction.

The original promissory note between the parties was a written contract. "A contract in writing may be altered by a contract in writing or by an executed oral agreement." Section 28-2-1602, MCA. The parties never signed a new written contract, but Hart alleges the parties formed an oral agreement to change and modify the terms of the promissory note. As we stated in Stoddard v. Gookin (1981), 191 Mont. 495, 503, 625 P.2d 529, 534, "An oral agreement altering a written agreement is not an 'executed oral agreement' within the statute [§ 28-2-1602, MCA] authorizing modifications of written contracts by an executed oral agreement unless its terms have been fully performed, and performance on one side is not sufficient." In this case, the terms of the alleged oral agreement were not fully performed. By their attorney's letter dated May 4, 1989, the Nimmicks established that they would not accept a deed in lieu of foreclosure as a modification of their promissory note. Clearly, the oral agreement was not executed and thus the contract (promissory note) was never properly altered by the parties.

The District Court reviewed the evidence and correctly

19

determined that the written agreement between the Nimmicks and Hart had not been altered by an executed oral agreement, and that there was no accord and satisfaction.

V.

Whether the District Court erred in finding that the Nimmicks had no obligation to mitigate their damages.

In the past, we have held "that a non-defaulting party in a contractual arrangement must act reasonably under the circumstances so as not to unnecessarily enlarge damages caused by the default." IFG Leasing Co. v. Schultz (1985), 217 Mont. 434, 437, 705 P.2d 576, 577; Diede v. Davis (1983), 203 Mont. 205, 214-215, 661 P.2d 838, 843.

In this case, Hart argues that the Nimmicks failed to mitigate their damages by not purchasing his home at the foreclosure sale. Hart claims that Nimmicks as the junior lienholders, should have bought his house and then in turn sold it at the best possible price. Hart maintains there was enough equity in his home after City Federal Savings Bank (first lienholder) was paid to discharge completely any obligation Hart had to the Nimmicks. Hart also claims, relying on IFG Leasing, 705 P.2d at 577, that the question of mitigation is a material issue of fact not susceptible to a motion for summary judgment. Nimmicks maintain Hart's bare assertions are insufficient to defeat a motion for summary judgment and that Hart has failed to produce any evidence to support his allegations that he had equity in his home prior to the City Federal foreclosure.

20

After reviewing the record, we find the Nimmicks did not violate the principle of reasonable mitigation of damages. There is no evidence that there existed enough equity in the home after City Federal's foreclosure to cover the Nimmicks' lien. Hart's assertions of equity come from his conclusory affidavit. Hart never introduced any evidence concerning the foreclosure sale price of his home, and whether that sale price in turn covered City Federal's lien and the Nimmicks' lien. Instead, Hart simply asserts there was equity in his property to cover his debt to the Nimmicks. Hart's bare assertions are insufficient to defeat a motion for summary judgment.

Furthermore, if Hart believed there was equity in the house, he could have recaptured his equity by buying his home at the foreclosure sale. As the District Court properly noted in its order:

> [A] plaintiff is not under a duty to mitigate damages if the other party, who had the duty to perform under the contract, had equal opportunity to perform and equal knowledge of the consequences of nonperformance. 22 Am.Jur.2d § 508, p. 591. In this case, it is the Court's opinion that Defendant had equal opportunity and equal knowledge of the consequences of his defaulting promissory note.

Hart has failed to show any genuine issue of material fact in support of his allegations that the Nimmicks failed to reasonably mitigate their damages. Therefore, the District Court properly entered summary judgment in favor of Nimmicks on the issue of failure to mitigate damages.

## VI.

Whether the District Court erred in dismissing Hart's

21

counterclaims.

Hart advanced two counterclaims in his answer, one for tortious interference with business relationships and the other for the loss of his house. Both of these claims accrued on or after May 19, 1989, when City Federal foreclosed on Hart's home.

Nimmicks argue that Hart's counterclaims are barred by the doctrine of collateral estoppel, which the Nimmicks claim arose as a result of the November 7, 1988, District Court order in cause no. 66726.

That argument fails because of the timing of the events. A judgment can bar claims in existence at the time the judgment was entered, but it cannot bar claims that arise after its entry. Here, Hart's two counterclaims arose after the foreclosure sale in May, 1989. These counterclaims accrued after the November 7, 1988 District Court order, and therefore this order could not have preclusive effect on Hart's counterclaims.

The District Court's order does not address Hart's counterclaims of tortious interference with business relationships and loss of his house. After reviewing the record, we find little evidence to support these counterclaims. Nevertheless, they are not barred by the District Court's November 7, 1988 order and the District Court on remand should entertain Hart's counterclaims. However, unless Hart produces evidence in support of his claims, Rule 11 sanctions should be considered by the District Court.

Accordingly, we affirm the District Court's summary judgment orders, with the exception of Hart's two counterclaims. Taylor and

22

Nimmicks are entitled to an award of attorney fees and costs including those incurred on appeal.

Fees and costs on Hart's counterclaims shall be decided separately.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices