No. 91-483

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

BURKE A. ESCHLER, LORI I. ESCHLER and
JAMI G. ESCHLER, individually and as
Co-Personal Representatives of the
Estate of JAMES P. ESCHLER, Deceased,

and

SHARON L. ILLE,

Plaintiffs and Appellants,

v.

JANET ETHEL ESCHLER, LEO B. LAPITO,
ROBERT SOLIE and HOFFMAN ASSOCIATES,
INC., a Montana Corporation,

Defendants and Respondents.

FILED

MAR 30 1995

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Thirteenth Judicial District,
               In and for the County of Yellowstone,
               The Honorable G. Todd Baugh, Judge presiding.


COUNSEL OF RECORD:

        For Appellants:

               Allen D. Gunderson; Gunderson Law Firm, Billings,
               Montana

               Jerome J. Cate; Cate Law Firm, Whitefish, Montana


        For Respondents:

               Don M. Hayes; Herndon, Hartman, Sweeney & Halverson,
               Billings, Montana

Submitted on Briefs:  February 23, 1995

Decided:  March 30, 1995

Filed:

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

This is an appeal from a grant of summary judgment by the Thirteenth Judicial District Court, Yellowstone County. We affirm.

The sole issue on appeal is whether the District Court erred in determining that no genuine issues of material fact exist with regard to appellants' claim and that respondents are entitled to judgment as a matter of law.

This appeal is the second of two by these appellants, both of which relate generally to certain life insurance polices of decedent James Eschler (James). In the earlier case, appellants Burke Eschler, Lori Eschler, Jami Eschler and Sharon Ille--James' children and fiancee, respectively--appealed a grant of summary judgment in favor of James' former spouse Janet (Janet) regarding entitlement to proceeds of two life insurance policies issued by Minnesota Mutual Life Insurance Company and one policy issued by Mutual Benefit Life Insurance Company. We affirmed in Eschler v. Eschler (1993), 257 Mont. 360, 849 P.2d 196, which sets forth the basic factual underpinnings of both cases. We include herein only those facts necessary to resolve the issue now before us and note that Mutual Benefit Life Insurance Company has been dismissed as a party to this appeal.

In March of 1990, appellants filed an action against Janet and Mutual Benefit Life Insurance Company (Mutual Benefit). They claimed entitlement to the proceeds of either of two Mutual Benefit life insurance policies, the first obtained during James and

2

Janet's marriage ("first policy") and the second applied for by James in August of 1989 and effective in an increased amount in September of 1989 ("second policy"). Among other things, appellants' original complaint alleged that Leo Lapito (Lapito)-- from whom, as Mutual Benefit's agent, James purchased the second policy--knew or should have known that James intended the second policy to replace the first policy.

In September of 1990, appellants were permitted to amend their complaint. The amended complaint added Lapito, Robert Solie (Solie) and Hoffman Associates, Inc. as named defendants. It alleged negligence relating to the second policy based on a breach of duty to inform James of certain information; the duties at issue are imposed by insurance regulations concerning replacement of existing life insurance. The thrust of the action was that the breach of duty should preclude reliance by Mutual Benefit on the suicide exclusion contained in the second policy, to the end that appellants would be entitled to the proceeds of that policy.

On October 5, 1990, respondents moved to dismiss pursuant to Rules 12 and 56, M.R.Civ.P., contending that the amended complaint failed to state a cause of action for which relief could be granted, that no genuine issues of material fact existed, and that they were entitled to judgment as a matter of law. Appellants subsequently sent discovery requests to respondents Lapito and Solie. Respondents moved for a protective order. Both of respondents' motions were fully briefed and submitted to the

3

District Court.

On July 25, 1991, the District Court entered its Memorandum and Order granting respondents' motion for summary judgment and determining, on that basis, that the motion for a protective order was moot. On appeal, appellants contend that the court erred in determining that no genuine issues of material fact existed on the record before it and, furthermore, that their inability to conduct discovery prevented them from presenting all the factual issues to the court.

A party moving for summary judgment must establish the absence of genuine issues of material fact and entitlement to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Once the moving party has met its burden, the nonmoving party must come forward with evidence showing the existence of a genuine issue of material fact. Rule 56(c), M.R.Civ.P. The facts presented must be of a substantial nature; conclusory or speculative statements are insufficient to raise genuine issues requiring trial. Nimmick v. Hart (1991), 248 Mont. 1, 7-8, 808 P.2d 481, 485 (citation omitted). Because summary judgment is never to be used as a substitute for trial where genuine issues exist, however, all inferences from the evidence presented must be resolved in favor of the nonmoving party. See State Med. Oxygen v. American Med. Oxygen (Mont. 1994), 883 P.2d 1241, 1243, 51 St.Rep. 1063, 1064 (citation omitted). This Court reviews the grant of a motion for summary judgment utilizing the same criteria as are initially applied by the trial

4

court. Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214.

The dispute before us relates specifically to the second Mutual Benefit policy covering James' life. James purchased this policy, in the amount of $100,000, from Lapito on August 7, 1989. James signed the application for the policy, which indicated that the second policy would not replace or change any existing insurance. He executed an amendment to the application the following day, increasing the face amount of the policy to $250,000. The named beneficiaries were James' fiancee, Ille, and his children--appellants herein. The policy contained a suicide exclusion and, because James committed suicide within the exclusionary period, Mutual Benefit denied payment under the policy.

Appellants' negligence action against respondents alleges that defendants Lapito and Solie were life insurance agents licensed pursuant to Montana law and, further, that they were agents of defendants Hoffman Associates and Mutual Benefit. Appellants assert that James' intent was to replace the first Mutual Benefit policy--and, indeed, the two Minnesota Mutual policies--with the second Mutual Benefit policy and to allow the earlier three policies to lapse. They allege that both Lapito and Solie knew or should have known of James' alleged intent and that both received commissions from the sale of the policy. As such, appellants allege that both individual defendants had an affirmative duty to

5

comply with Montana law concerning replacement of existing life insurance coverage. The underlying premise is that the breach of that duty caused them injury. Hoffman Associates and Mutual Benefit are liable for the breach, according to appellants, under a theory of respondeat superior.

It is hornbook law that liability in a negligence action is imposed where a plaintiff establishes breach of a duty which proximately causes injury or damage. The first essential element which must be established in a negligence action is the existence of a duty. Burk Ranches, Inc. v. State (1990), 242 Mont. 300, 308-09, 790 P.2d 443, 448. Whether a duty exists is a legal question to be determined by the trial court. Buhr v. Flathead County (Mont. 1994), 886 P.2d 381, 388, 51 St.Rep. 1258, 1263 (citation omitted). Because we conclude that the specific duties for breach of which appellants seek recovery are not applicable here as a matter of law, we need not address the other elements of appellants' negligence action.

In this case, the duties alleged to have been breached are contained in § 6.6.305, ARM. Section 6.6.305, ARM, begins by requiring that applications for life insurance policies contain a "statement signed by the applicant as to whether or not such insurance will replace existing life insurance . . . ," as well as a signed statement by the agent "as to whether or not the agent knows replacement is or may be involved in the transaction." Section 6.6.305(1), ARM. It is undisputed that these duties

6

applied to James' application of August 7, 1989, for the second Mutual Benefit policy.

With regard to these duties, however, the record is clear that the application contained a question regarding replacement, change, or borrowing against existing insurance, that the question was answered in the negative, and that both James and Lapito signed the application. In addition, Lapito's "Agent's Report" also indicated that no insurance had been replaced and that no such action was planned. Thus, respondents established that no genuine issue of material fact existed regarding the breach of these duties.

Appellants assert, however, that no proof exists that James actually filled out the application himself or that he read the application before signing it. They offer no authority for the proposition that an applicant for insurance is required to fill out the application himself or herself and, indeed, § 6.6.305(1), ARM, mandates only that the application contain the statement regarding replacement and that it be signed. Moreover, the terms of the application itself state that by signing it, both James and Lapito represented that all of the statements in the application were true to the best of their knowledge and belief. The burden having shifted to appellants to show a genuine issue of material fact in this regard, appellants failed to come forward with any evidence that the duties imposed by § 6.6.305(1), ARM, were breached. Their speculative statements attempting to raise suspicions do not rise to the presentation of facts of a substantial nature. See Nimmick,

7

808 P.2d at 485. Nor can any inferences be drawn from the evidence presented which, resolved in appellants' favor, tend to establish a genuine issue of material fact regarding breach of these duties.

Appellants also argue that the duties contained in § 6.6.305(2)(a)-(c), ARM, apply here. It is undisputed that those duties were not met by respondents. Thus, if those duties apply, they have been breached by respondents.

By its terms, § 6.6.305(2), ARM, applies "[w]here a replacement [of existing insurance] is involved . . . ." As defined in § 6.6.303(7)(a), ARM, "Replacement" means a transaction in which new life insurance is being purchased and the agent knows, or should know, that existing life insurance is to be lapsed. Appellants' argument in this regard is that, because James permitted other policies to lapse via nonpayment of premiums after the second Mutual Benefit policy was applied for and obtained, replacement actually occurred and, thus, the § 6.6.305(2), ARM, duties were applicable as a matter of law.

The problem with appellants' argument is that James attested in writing that no existing insurance was to be replaced on issuance of the second Mutual Benefit policy. By signing the application, he also attested that the statements made therein were true and complete to the best of his knowledge and belief. On that basis, we conclude that the duties imposed by § 6.6.305(2), ARM, "[w]here a replacement is involved . . ." were not applicable to respondents here regarding the second Mutual Benefit policy.

8

Appellants raise a convoluted series of occurrences and circumstances which they contend raise a genuine issue of material fact regarding James' intent regarding lapse of the other life insurance policies at the time he applied for the second Mutual Benefit policy. We need not address these occurrences and circumstances individually; it is necessary to note only that most of them are totally unrelated to respondents herein and what respondents actually knew or should have known. James may or may not have intended--either at the time he applied for the second Mutual Benefit policy or at some later time--to allow other policies to lapse. As the District Court observed, we will never know James' true intent during a troubled period in his life. Whatever his secret intent may have been, it cannot be attributed to respondents herein, given documentary evidence of James' stated intent not to replace existing insurance and sworn affidavit evidence that James never indicated in any way that the second Mutual Benefit policy was intended to replace any existing policy or policies. While the circumstances cited by appellants might be pertinent in an action in which James' intent was the issue in dispute, it does not create an issue of material fact in this action concerning what respondents knew or should have known.

Appellants' final argument regarding the existence of a duty is that the requirements of § 6.6.305, ARM, were separately applicable to James' execution of an amendment to the August 7, 1989, application the following day. The amendment increased the

9

coverage under the second Mutual Benefit policy from $100,000 to $250,000. Appellants contend that the amendment constituted a new application "replacing" the policy for which application was made one day earlier and, as a result, the duties of both subsection (1) and subsection (2) of § 6.6.305, ARM, were applicable.

Appellants cite no authority for their position and a plain reading of the insurance regulations at issue does not support it. Indeed, the regulatory definition of "replacement" references a transaction in which "new" life insurance is to be purchased and existing life insurance is to be lapsed or otherwise terminated. Section 6.6.303(7), ARM. No new insurance was being purchased by James on August 8; he merely sought to increase the face amount of the new insurance for which he had applied the day before. Similarly, the "existing life insurance" of August 7 was not being lapsed or otherwise terminated; the coverage was merely being increased. The regulations relied on by appellants do not require an entirely new application procedure and resulting reimposition of duties when an increase in the face amount of coverage under a life insurance policy is sought. Thus, we conclude that the duties contained in § 6.6.305, ARM, do not apply when an existing application for life insurance is amended to increase the face amount of the policy.

The District Court did not err in concluding as a matter of law that respondents' duty to comply with the replacement provisions of § 6.6.305(2), ARM, did not arise unless a replacement

10

was involved. The court also did not err in determining that, on the record before it, appellants did not raise a genuine issue of material fact regarding whether a replacement was involved in James' August 7, 1989, application for the second Mutual Benefit policy. We hold, therefore, that the District Court did not err in granting respondents' motion for summary judgment.

Finally, we address briefly appellants' contention that they were precluded from raising genuine issues of material fact by their inability to conduct discovery. As noted above, the original complaint in this case was filed in March, 1990, and contained allegations that Lapito knew or should have known that the second Mutual Benefit policy was intended to replace the first policy. Appellants' amended complaint--adding Lapito, Solie and Hartmann Associates as named defendants under the same theory as was raised in the original complaint--was filed in September, 1990. On this record, we cannot conclude that appellants were "unable" to pursue discovery. Any "fault" arising from the decision not to do so until after respondents moved to dismiss or for summary judgment cannot be imposed on respondents or the District Court.

Moreover, we have carefully scrutinized respondents' motions in the District Court and the briefs in support of, and opposition to, those motions. Appellants did not request the District Court to delay ruling on the motion to dismiss or for summary judgment in order that they could obtain sufficient discovery to raise genuine issues of material fact pertinent to respondents' motion. Such a

procedure is authorized by Rule 56(f), M.R.Civ.P., and, upon sufficient showing, may result in a continuance for discovery necessary to respond to a summary judgment action. Appellants not only did not avail themselves of this procedure, they argued in response to respondents' motion for protective order that they had raised genuine issues of material fact in their briefs and supporting documents.

As a general rule, we will not consider an argument raised for the first time on appeal. Buhr, 886 P.2d at 389. This rule is particularly appropriate in circumstances such as this, where a specific procedure was available by which appellants could have sought the relief they now seek from this Court and, indeed, where appellants now take a position inconsistent with that presented to the District Court.

Finally, we observe that the discovery requested of respondents Lapito and Solie was largely unrelated to the allegations constituting appellants' negligence action against them. Many of the interrogatories sought information about the commission split on the second policy between Lapito and Solie; others inquired about James' payment of premiums for the first policy and the individual respondents' ongoing commissions under that policy; and others sought to delve into an entity called Business and Estate Planning with which Lapito apparently was connected. In short, the interrogatories were largely unrelated to appellants' allegations that respondents breached applicable duties

12

under § 6.6.305, ARM.

For these reasons, we conclude that appellants were not "unable" to conduct discovery.

Affirmed.

Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1988 Internal Operating Rules, this decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to Montana Law Week, State Reporter and West Publishing Company.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

13

March 30, 1995

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Jerome J. Cate
Cate Law Firm
P.O. Box 1207
Whitefish, MT 59937-1207

Allen D. Gunderson
Gunderson Law Firm
P. O. Box 926
Billings, MT 59103

Brent R. Cromley
Moulton, Bellingham, Longo & Mather
1900 Sheraton Plaza, P.O. Box 2559
Billings, MT 59103-2559

Donald L. Harris and Steven R. Milch
Crowley, Haughey, Hanson, Toole & Dietrich
P.O. Box 2529
Billings, MT 59103-2529

Don M. Hayes
Herndon, Hartman, Sweeney & Halverson
P.O. Box 80270
Billings, MT 59108-0270

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy