FILED

06/11/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0580

DA 22-0580

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2024 MT 124N

IN RE THE MARRIAGE OF:

PEGGY LEANN SMITH,

       Petitioner and Appellee,

and

WILLIAM MICHAEL SMITH,

       Respondent and Appellant.

APPEAL FROM:    District Court of the Third Judicial District,
In and For the County of Powell, Cause No. DR-19-43
Honorable Ray J. Dayton, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

      Lewis K. Smith, Smith Law Firm, P.C., Helena, Montana

      For Appellee:

      Jamie J. McKittrick, Thomas H. Stanton, Wells & McKittrick, P.C.,
Missoula, Montana

                  Submitted on Briefs:  June 14, 2023

                           Decided:  June 11, 2024

Filed:

_____
              Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1     Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It is not precedent and shall not be cited as such. The case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2     William Michael Smith (Mike) appeals the September 2022 judgment of the Montana Third Judicial District Court, Powell County, denying his M. R. Civ. P. 60(b) motion for post-judgment relief from the court's March 2022 final divorce decree regarding an alleged surveying error in the certificate of survey effecting the agreed partition of a tract of marital property. We reverse and remand for further proceedings in accordance with this opinion.

¶3     Mike and Peggy Smith (Peggy) were married in 1977. In 1987, they jointly purchased a 158-acre property in Powell County, Montana (Property). In December 2019, Peggy petitioned for dissolution of the parties' marriage and equitable apportionment of their marital estate. During negotiations in late summer 2020, the parties settled on an agreed partition of the Property. Peggy thus commissioned a licensed land surveyor (Tom Moodry) to prepare a proposed certificate of survey (COS) which, upon co-owner signatures and filing, would divide the Property as agreed pursuant to a contemplated marital settlement agreement.[1]     Moodry initially produced a preliminary draft COS.

---

[1] See § 40-4-201, MCA (marital settlement agreements), and §§ 76-3-103(1), (4), -201(1)(a), -302(1), -401, and -404(1), MCA (authorizing divisions of land by filed certificate of survey exempt from local subdivision review for divisions of land "that . . . could be" effected by court order or operation of law).

A comprehensive marital settlement agreement ultimately did not materialize, however, due to the parties' continuing disagreement regarding other marital estate matters. Moodry later provided a final COS (2022) to the parties shortly before trial.

Diagram 1 — 2022 Moodry COS Excerpt



¶4 At trial in March 2022, the parties notified the court of their previously agreed apportionment of all but a few items of disputed marital property. They provided the court with a written schedule setting forth their agreed marital property apportionment as supported by their respective trial testimonies. Both parties acknowledged that the intended purpose of the Moodry COS was to effect their previously agreed partition of the Property, and that Peggy's agreed share of the Property would be benefitted by a roadway easement running north-south across Mike's retained share of the Property.[2]

_____

[2] Peggy testified to her understanding that she would receive a 40-foot roadway easement on and along the existing "lane on . . . Mike's property."

On cross-examination, however, Mike's counsel questioned whether the Moodry COS depicted the north-south easement as running "over" the adjoining property of Harold Jette, rather than running north-south inside the west boundary of Mike's share of the Property. Peggy answered that she did not know the precise location of the easement as indicated on the Moodry COS and related property records, only "what Tom Moodry said."

¶5 At the close of trial, the District Court acknowledged that there was "a problem with the easement" and that it "might be in the wrong place" as indicated by the Moodry COS. The court thus instructed the parties to submit proposed findings of fact and conclusions of law that would "finish this divorce" without "magnify[ing]" the problem. Through their respective counsel, Mike and Peggy later filed separate proposed findings, conclusions of law, and decrees which similarly specified their previously agreed partition of the Property consistent with their respective trial testimonies and stipulated marital estate apportionment schedule.[3] Neither party's proposed findings, conclusions, and decree referenced, much less attempted to address, any discrepancy between the location of the easement and preexisting roadway as mutually agreed by the parties and any different location indicated by the referenced Moodry COS.

¶6 The District Court subsequently issued comprehensive written findings of fact, conclusions of law, and resulting decree dissolving the parties' marriage and apportioning their marital estate. In accordance with the parties' consistent trial testimonies and similar

---

[3] Mike's proposed findings, conclusions, and decree included the initial draft Moodry COS for attachment as decree Exhibit 1, while Peggy's included the final COS produced by Moodry shortly before trial.

corresponding proposed findings, conclusions, and decrees, the court's pertinent findings and resulting decree apportioned the subject Property as follows:

(1) to Mike:

(A) approximately 54.51 acres as "identified" as Tract 1 ("Mike Smith" property) in the 2022 Moodry COS attached as Decree Exhibit 1, thus including:

(B) approximately 40 acres in the SE¼ of the NE¼ of Section 14, T6N, R10W; and

(C) approximately 14.51 acres in the N½ of the NE¼ of the SE¼ of Section 14, T6N, R10W; and thus not including the property more commonly known as "the [H]ayfield"; and

(2) to Peggy:

(A) approximately 80 acres in the W½ of the SE¼ of Section 14, T6N, R10W, as "identified" as the "Peggy Smith" property in the 2022 Moodry COS attached as Decree Exhibit 1;

(B) approximately 20.83 acres in the S½ of the NE¼ of the SE¼ of Section 14, T6N, R10W, as "identified" as Tract 2 ("Peggy Smith" property) in the 2022 Moodry COS attached as Decree Exhibit 1, and more commonly known as "the Hayfield"; and

(C) "[a] 40 foot easement *through Mike's property* for use and access of the existing road or any replacement road to access [Peggy's] property from the county road."

(Emphasis added.) Neither party appealed.

¶7 Over a month later, Mike moved pursuant to M. R. Civ. P. 60(b)(1) and (3) for post-judgment relief from the decreed marital dissolution partition of the subject Property on the asserted ground that the referenced 2022 Moodry COS erroneously described and depicted the location of the preexisting north-south roadway, and corresponding roadway easement intended to benefit Peggy's share of the Property, over Mike's retained share of

5

the Property. He alleged that the Moodry COS was plagued by various surveying errors later identified by a registered third-party professional land surveyor (Ken Jenkins) in the wake of subsequent boundary disputes between Peggy and Mike, and Peggy and her neighbors to the west (the Andersons). The motion was supported by an affidavit from surveyor Jenkins specifying the various asserted surveying errors.[4] The motion was further supported by Mike's affidavit assertion that he did not earlier object to the accuracy of the Moodry COS at trial because: (1) he "believed the surveyor had done his job to make the survey reflect the [parties' prior] agreement . . . regarding" the land division; (2) he assumed the Moodry COS "simply showed the easement across my ground that Peggy was to receive"; and (3) Moodry misrepresented to Mike's counsel prior to trial that he had previously consulted with Mike and Peggy on-site when surveying to establish a corner to mark the edge of the hayfield but in fact had not. The motion thus prayed for an order compelling a revised or new COS correctly locating the preexisting roadway, and corresponding easement benefitting Peggy's share of the marital Property as previously agreed, in accordance with the pertinent prior land records, and as reflected in the parties' trial testimonies and corresponding provisions of the District Court's findings and marital dissolution decree.

---

[4] *Inter alia*, the Jenkins affidavit pointed out the discrepancy between the easement location shown on the Moodry COS (inside the east boundary of the adjoining Jette property) and the location of the preexisting roadway that ran north-south inside the west boundary of Mike's retained share of the Property as previously noted and depicted in a 1985 COS (Hendricks COS) filed to effect a division of the pre-partition Smith Property by the prior owner (Johnson) for purposes of a family conveyance effected by COS pursuant to §§ 76-3-103(1), (4), -207(1)(b), and -404, MCA.

¶8    Peggy opposed Mike's Rule 60(b) motion on the asserted grounds that he stipulated to the Moodry COS at trial, and that the COS in any event correctly located the intended easement in accordance with the pertinent land parcel/tract boundaries of record including the 1985 Hendricks COS, *supra* note 4. Peggy's latter assertion was supported only by a purported unsigned and unsworn letter from Moodry to Peggy's counsel defending the accuracy of the Moodry COS. In response to the purported Moodry letter assertions, Mike later filed a supplemental affidavit from surveyor Jenkins asserting, *inter alia*, that he had since surveyed the Smith marital Property, *inter alia* including the west boundary of the aliquot 80-acre parcel of Smith property apportioned to Peggy. The supplemental Jenkins affidavit asserted that he also found that the Moodry COS erroneously located "seven of the eight [property] corners," and was thus "internally inconsistent."

¶9    Both parties appeared with counsel at the ensuing Rule 60(b) hearing on Mike's motion. Mike presented the testimony of surveyor Jenkins detailing the various grounds upon which he asserted that the Moodry COS was demonstrably inaccurate based on the pertinent preexisting property records and uniform surveying practices. Consistent with his earlier affidavit testimony, Jenkins ultimately concluded, *inter alia*, that a correct survey of the Smith marital property, in accordance with the pertinent prior land records, would show that the preexisting north-south roadway, and corresponding roadway easement intended to benefit Peggy's share of the marital Property, would run north-south inside the west boundary of Mike's retained share of the marital Property, rather than inside or across the east boundary of the adjoining Jette property. Peggy presented no testimony or evidence at hearing, thereby leaving Jenkins' testimony unrebutted.

7

¶10 At the close of hearing, the District Court acknowledged from the bench that the Moodry COS, which was intended to effect the parties' previously agreed partition of their marital property, may have actually "defeated" it. The court asserted, however, that it lacked authority to either establish or alter the record east boundary line of the adjoining Jette property, or order a new corrective survey, without Jette as a party to this action. Without any supporting finding of fact, or conclusion of law, the District Court issued a one-page order on September 29, 2022, summarily denying Mike's Rule 60(b) motion because:

> [i]t became apparent . . . that [Mike's] requested relief could not be accomplished without involving individuals who have not been made parties. The Court also doubts that the relief requested will solve the problems that continue to exist between the parties.

Mike timely appeals.

¶11 "[P]roperty disposition" provisions set forth in a final marital dissolution decree "may not be" subsequently "revoked or modified by a court" unless "the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state." Section 40-4-208(3)(b), MCA. However, M. R. Civ. P. 60(b) is a "law of this state" justifying "the reopening of" a marital property disposition judgment as referenced in § 40-4-208(3)(b), MCA. *In re Marriage of Woolsey*, 214 Mont. 106, 109-10, 629 P.2d 451, 453 (1984); *Tanascu v. Tanascu*, 2014 MT 293, ¶ 12, 371 Mont. 1, 338 P.3d 47; *In re Marriage of Conklin*, 221 Mont. 30, 35, 716 P.2d 629, 633 (1986). "On motion and just terms, [a] court may relieve a party . . . from a final judgment, order, or proceeding" based on "mistake, inadvertence, . . . or excusable neglect." M. R. Civ. P. 60(b)(1).

8

¶12 Here, the District Court was presented with uncontroverted expert testimony that the Moodry COS erroneously located the subject preexisting north-south roadway, and corresponding easement intended to benefit Peggy's retained share of the marital Property, on and across the third-party Jette property, rather than wholly inside the west boundary of Mike's retained share of the marital Property as originally agreed before and at trial, and as expressly specified in the court's corresponding marital dissolution decree. Mike thus made an unrebutted evidentiary showing that the court's marital dissolution decree is irreconcilably ambiguous and erroneous to the extent that it ultimately decreed "[a] 40 foot easement *through Mike's* [*retained marital*] *property* for use and access of the existing road or any replacement road to access [Peggy's] property from the county road," but by reference to a COS which locates the preexisting roadway, and corresponding Peggy easement, in whole or in part on and across the adjoining third-party Jette property. Whether based on mistake, inadvertence, or excusable neglect Mike thus made an unrebutted showing that Rule 60(b)(1) relief was warranted to correct an erroneously ambiguous apportionment of the parties' marital Property under § 40-4-202, MCA.

¶13 The sole purpose of the Moodry COS, and ultimately the District Court's pertinent findings of fact and marital dissolution decree, was to effect an equitable apportionment of the Smith marital estate, including the subject real Property, as required by § 40-4-202, MCA. Consequently, notwithstanding any resulting third-party dispute that may have later arisen, neither Jette nor any other third party was or is a necessary or proper party to the inventory, i.e., survey, or apportionment of the Smith marital Property under § 40-4-202, MCA. In turn, neither Jette nor any other third party was or is a necessary or proper party

9

to correction of the survey and apportionment of that marital Property under § 40-4-202, MCA, pursuant to M. R. Civ. P. 60(b)(1).

¶14 We hold that the District Court abused its discretion in denying Mike's motion for Rule 60(b)(1) relief. The court's September 2022 judgment denying Rule 60(b)(1) relief is hereby reversed. This matter is accordingly remanded to the District Court for correction of the apportionment of the subject marital real Property in accordance with the parties' prior agreement as reflected in their respective trial testimonies and the court's resulting findings of fact and decreed partition of the Property, but by reference to an unambiguous conforming COS produced and filed in accordance with the pertinent requirements of §§ 76-3-103(1), (4), -201(1)(a), -302(1), -401, and -404(1), MCA (authorizing divisions of land by filed certificate of survey exempt from local subdivision review for divisions of land "that . . . could be" effected by court order or operation of law).

¶15 This case is decided by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. Reversed and Remanded.

/S/ DIRK M. SANDEFUR

We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA